*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


**OPINION**

No. 04-07-00442-CR

Mark **REASOR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 1996-CR-2415
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:         Karen Angelini, Justice
                 Phylis J. Speedlin, Justice
                 Steven C. Hilbig, Justice

Delivered and Filed:   September 24, 2008

AFFIRMED AS MODIFIED

In nine issues on appeal, Mark Reasor complains that the trial court abused its discretion in

revoking his deferred adjudication community supervision and sentencing him to six years'

confinement. We modify the judgment to delete the payment of restitution and affirm as modified.

**BACKGROUND**

In 1996, Reasor was charged by indictment with possession of 400 grams or more of cocaine,

as a repeat offender. On May 1, 1997, pursuant to a plea bargain agreement, Reasor pleaded guilty

to possession of cocaine between 200 and 400 grams. The trial court deferred adjudicating guilt,

and awarded Reasor a ten-year term of community supervision. Seven years later, the State filed

a motion to revoke Reasor's community supervision. At a hearing held on August 12, 2005, Reasor pleaded "true" to two violations of his conditions of supervision, but was continued on supervision pursuant to an order entitled "Order Altering and Amending Term And/Or Conditions of Community Supervision." As a condition of his community supervision, Reasor was ordered to pay $10,453 in restitution, to be paid at a rate of $847 per month beginning November 10, 2005.

Almost one year later, the State filed another motion to revoke. At the revocation hearing, Reasor pleaded "not true" to the allegations that he committed six separate violations of his community supervision, including criminal mischief, theft by check, and failure to pay restitution. The trial court found all but one of the State's allegations to be true, revoked Reasor's community supervision, and sentenced Reasor to a term of six years' confinement in the Institutional Division, Texas Department of Criminal Justice. The trial court found that Reasor was obligated to pay $15,053 in restitution, and recommended to the Texas Board of Pardons and Paroles that payment of the restitution be made a condition of parole. Reasor filed a motion for new trial, which was denied by the trial court after a hearing.

### REVOCATION OF COMMUNITY SUPERVISION — STANDARD OF REVIEW

We review the trial court's judgment revoking community supervision under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). We indulge all reasonable inferences in a light favorable to the trial court's ruling, *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. [Panel Op.] 1979), and sustain the order of revocation if the evidence substantiates a single violation. *Jones v. State*, 571 S.W.2d 191, 193-94 (Tex. Crim. App. [Panel Op.] 1978). Because a revocation hearing is an administrative hearing rather than a criminal trial, the State is only required to prove a probation violation by a preponderance of the evidence. *Cobb v. State,* 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The State meets its burden when the greater

weight of the credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision. *Rickels,* 202 S.W.3d at 764. If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Cardona v. State*, 665 S.W.2d 492, 493-94 (Tex. Crim. App. 1984).

### DISCUSSION

*Criminal Mischief*

Reasor and his girlfriend, Tanya Ambrosio, rented a house from Nick Fusco. The lease, which was signed by both Reasor and Ambrosio, began on March 1, 2005 and was to continue until March 31, 2006. The rent was $1,200 per month, and a $500 security deposit was required. From June 8, 2005 until September 8, 2005, Reasor was required to reside in a federal halfway house as a condition of supervised release imposed for a subsequent federal criminal conviction. During this time, Fusco became unhappy about the appearance of the rental home, complaining that contracting supplies, wood logs, and a large tree stump were left in the yard. In late July 2005, Fusco informed Reasor and Ambrosio that they had breached their lease and demanded they move out by August 31, 2005; however, the next month, Fusco and Reasor agreed that Reasor and Ambrosio would move out on October 31, 2005. Shortly thereafter, Fusco went to the rental house to collect rent for the month of September. Fusco claimed he entered the home after knocking and calling out; Ambrosio, however, testified that she was home alone and in the shower when Fusco entered the home and came into the bathroom where she was showering. Ambrosio then decided to vacate the premises at once. After they moved out, Fusco sent Reasor and Ambrosio the following letter:

> **Your Security Deposit would have been <u>ALL Returned</u> if you abided by your Rental lease.** All damages done when renting our property have been documented and photographed. . . . No Keys returned or yard work clean up was done Prior to moving. **NO MOVE-OUT NOTICES was given by tenants. You move out September 30 20 05. You did not pay for the month of September 2005. You owe us for 3 return ISF checks. <u>We can work out a fair settlement between the</u>**

**both of us, rather going to a small claim court.** **Please contact me.** **We have many color photos and documents to prove our case.** **Don't jeopardize your Parole or credit.**

Fusco then notified Reasor's state probation officer about four bad checks which he claimed Reasor had written to him for rent. The State then filed a motion to revoke Reasor's community supervision, alleging that he: 1) committed the offense of criminal mischief by damaging Fusco's rental home; 2) committed three offenses of theft by paying for rent with a hot check; 3) committed the offense of theft of services by failing to pay one month's rent; and 4) failed to pay court-ordered restitution. As noted, the trial court found all of the allegations true except for one allegation of theft.

On appeal, Reasor argues that the trial court abused its discretion in finding that he violated the terms of his community supervision by committing the offense of criminal mischief by causing $50 to $500 of property damage. A person commits the offense of criminal mischief if, without the effective consent of the owner, he intentionally or knowingly damages or destroys the tangible property of the owner. TEX. PENAL CODE ANN. § 28.03(a)(1) (Vernon Supp. 2008). "The 'value of pecuniary loss' or 'cost of replacing or repairing damaged property' is a crucial element of the offense because it forms the basis of punishment assessed." *Barnes v. State*, 248 S.W.3d 217, 220 (Tex. App.—Houston [1st Dist.] 2007, pet. struck) (citing *Elomary v. State*, 796 S.W.2d 191, 192-93 (Tex. Crim. App. 1990)). If the property was damaged, the amount of pecuniary loss is "the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred." TEX. PENAL CODE ANN. § 28.06(b) (Vernon 2003). The property does not actually have to be repaired to establish the cost of repair work. *Elomary*, 796 S.W.2d at 193.

At the revocation hearing, Fusco testified that Reasor painted inside the rental house without his permission and that Reasor removed the cabinet doors in the bathroom, kitchen, and dining

room. The majority of the cabinet doors were lost and never replaced. Reasor also removed a ceiling fan and a non-functioning air conditioning unit; the ceiling fan was left disassembled as was the air conditioning unit. Fusco testified that he had spent more than $50 repairing the damage that was done to the rental home. He also noted that there was a hole in the back bedroom wall caused by slamming the door into the wall. Fusco further stated that, although he never got an estimate, he believed that it would cost him more than $50 to replace the cabinet doors that are missing; he also figured it would cost $120 to repair the air conditioning unit. He repaired the ceiling fan with a piece of board. Fusco used part of the $500 security deposit to pay for some of the repair costs.

Reasor conceded that he did some painting in the house, but stated he had Fusco's permission. Reasor stated he removed the cabinet doors in order to paint them or stain them to make them more presentable, but did not finish the project before moving out. Reasor stated that he did not remove the ceiling fan, but that one blade just fell off. Reasor admitted removing the old air conditioning unit and replacing it with his own unit. The hole in the sheetrock was caused because there was not a doorstop on the baseboard of the wall. Ambrosio testified that most of the damage done to the house was her fault, and that Fusco was a demanding landlord. She stated that she removed the cabinet doors in order to paint them and did not replace them because she vacated the house suddenly after Fusco walked in on her while she was in the shower.

Reasor maintains that the dispute between him and Fusco was civil in nature and that the damages described by Fusco were of the sort anticipated by the lease agreement, and covered by the security deposit. Further, he asserts the State's contention that the damages were between $50 and $500 indicates that the $500 security deposit was sufficient to cover the alleged damages. Reasor essentially asks this court to hold that when a civil remedy is available to a victim of a crime, the victim may not pursue criminal redress. We decline to do so.

Additionally, Reasor argues that the evidence that he committed criminal mischief was legally insufficient because the State failed to offer adequate proof on the element of pecuniary loss and merely relied on Fusco's personal estimate of the cost of repairs. *See Barnes*, 248 S.W.3d at 220; *Elomary*, 796 S.W.2d at 193 (without further evidence, "off-the-wall" lay opinion testimony or a mere estimate of cost of repair is insufficient to prove the cost of repairs for a criminal mischief conviction). In finding that Reasor committed the offense of criminal mischief, the trial court was entitled to assess the witnesses' credibility and the weight to be given to the evidence. *See Jackson v. State*, 915 S.W.2d 104, 105-06 (Tex. App.—San Antonio 1996, no pet.). The trial court could have chosen to believe Fusco and disregarded Ambrosio's testimony that the damage to the home was her fault. Furthermore, the trial court was free to disbelieve both Reasor and Ambrosio's testimony that they removed the cabinet doors with the intent to replace them. The intent to repair the damage is immaterial so long as there was intent to damage or destroy in the first instance. *See Athey v. State*, 697 S.W.2d 818, 820 (Tex. App.—Dallas 1985, no pet.) (upholding conviction for criminal mischief even though appellant denied removing cabinets, sheetrock, and floor tiles with intent to damage or destroy rental house because "[a]ny intent appellant may have had to repair the damage and then restore whatever loss he may have caused the owner is immaterial"). Furthermore, Fusco's testimony that he had already spent more than $50 repairing the damage is sufficient evidence of the amount of pecuniary loss given the lesser preponderance of the standard used in revocation proceedings. Accordingly, on this record, we conclude that the evidence created a reasonable belief that Reasor committed the offense of criminal mischief, and therefore the trial court did not abuse its discretion in revoking Reasor's community supervision. Reasor's first issue is overruled.

Because proof of a single probation violation is sufficient to support a revocation, we need not address the remaining alleged violations. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Lewis v. State*, 195 S.W.3d 205, 209 (Tex. App.—San Antonio 2006, no pet.). Likewise, it is unnecessary to address Reasor's eighth and ninth issues involving evidentiary challenges related to the remaining alleged probation violations.

### *Restitution*

In Reasor's sixth issue, he contends the trial court's order recommending that Reasor pay $15,053 in restitution as a condition of parole is unlawful and must be set aside. At the March 30, 2007 revocation hearing, the following exchange occurred after the trial court revoked community supervision and sentenced Reasor to six years' imprisonment:

| | |
|---|---|
| State: | Would you order the original restitution to Ms. Hill and Mr. Fusco as a condition of sentence? |
| | . . . |
| Court: | Are we clear on what the restitution is for Mr. Fusco? |
| State: | I guess it would be whatever you decide it to be. |
| Defense: | I think it would be [Fusco's] loss. |
| State: | The checks you found true, it would be the - - I guess the $10,000 that he agreed on and then the 14 - - |
| Court: | I will order whatever original restitution was in place - - |
| State: | Okay. |
| Court: | - - and as to only those allegations that I found true. I believe there was one allegation that was not true. Okay? |

The judgment revoking supervision recites:

> The court finds that $15,053.00 restitution is due and owed to the victim of this felony offense. Restitution payments should be forwarded to the Board of Pardons and Paroles, for the victim, whose name and address the court determines should not, in the interest of justice, be included in this judgment.

In a timely filed motion for new trial, Reasor complained in Grounds Five and Six that the trial court erred in ordering him to pay restitution to Jennifer Hill and Nick Fusco as a condition of parole because Hill and Fusco were not victims of the underlying offense for which community

supervision was imposed. *See Idowu v. State*, 73 S.W.3d 918, 921-22 (Tex. Crim. App. 2002) (complaint regarding restitution order may be raised for first time in motion for new trial). A challenge to a restitution order is reviewed under an abuse of discretion standard. *Cartwright v. State*, 605 S.W.2d 287, 288-89 (Tex. Crim. App. [Panel Op.] 1980); *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd). The court abuses its discretion when it acts in an arbitrary or unreasonable manner. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g).

A trial court may impose restitution only for the victim of the offense for which the defendant was convicted. *Martin v. State*, 874 S.W.2d 674, 677 (Tex. Crim. App. 1994). Reasor was convicted of possession of cocaine. Subsequent to being placed on probation for the possession offense, Jennifer Hill obtained a civil judgment against Reasor related to incomplete home improvement work, and Nick Fusco is the landlord who accused Reasor of damaging his rental home and writing hot checks. Clearly, neither Hill nor Fusco were victims of Reasor's original offense of conviction—possession of cocaine—as statutorily required. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (Vernon Supp. 2008) (sentencing court may order defendant to make restitution to any victim of the offense). Accordingly, the trial court abused its discretion in recommending that restitution be paid to Hill and Fusco as a condition of Reasor's parole for the possession offense. *See Campbell v. State*, 5 S.W.3d 693, 697 (Tex. Crim. App. 1999) (noting that "trial court may not order restitution to any but the victim or victims of the offense with which the offender is charged"); *Gordon v. State*, 707 S.W.2d 626, 630 (Tex. Crim. App. 1986) (holding that the trial court is without authority to order appellant to make restitution for losses caused by an offense for which he was not criminally responsible); *Lemos*, 27 S.W.3d at 49 (holding that award of restitution to compensate victim's wife and mother was improper because they were not victims as defined by article 42.037).

Because the trial court lacked the authority to recommend that Reasor pay restitution to Hill and Fusco as a condition of parole, the appropriate remedy is to delete the restitution from the judgment of the trial court. *See id.* (deleting condition of community supervision that ordered appellant to pay restitution to non-victims of charged offense). This court has authority to modify judgments when we have the necessary information to make a correction. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). Accordingly, we sustain Reasor's sixth issue and modify the trial court's judgment to delete that portion of the judgment imposing restitution.

### *Findings of Fact and Conclusions of Law*

Finally, in his seventh issue, Reasor contends the trial court denied him procedural due process by failing to provide him with a written "statement as to the evidence relied on, and the reasons for revoking his community supervision" despite numerous requests to the trial court. *See Ex parte Carmona*, 185 S.W.3d 492, 495 (Tex. Crim. App. 2006) (U.S. Constitution protects persons who are released on community supervision from re-incarceration without due process of law). Reasor argues he was harmed by the court's failure to enter formal findings of fact and conclusions of law because the State "argued various theories of theft . . . general theft, theft of services, presumption of theft by check," and if the court had made findings as to which theft theory it believed, it would have made Reasor's "challenges on appeal more focused [and] would have facilitated this Court's review." Because this complaint pertains to the several instances of theft alleged as grounds for revocation, and because we resolve this appeal on the criminal mischief ground, it is not strictly necessary to address this issue; however, in the interest of thoroughness, we will examine whether Reasor was entitled to written findings of fact and conclusions of law.

Due process in the revocation context requires: (1) a hearing; (2) written notice of the claimed violations; (3) disclosure of the evidence against the defendant; (4) an opportunity to be heard and to present witnesses and documentary evidence; (5) a neutral hearing body; and (6) "a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation." *Id.* (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). When a defendant timely requests the entry of specific findings of fact upon which revocation is based, the trial court errs in failing to enter such findings of fact. *Whisenant v. State,* 557 S.W.2d 102, 105 (Tex. Crim. App. 1977); *Joseph v. State*, 3 S.W.3d 627, 639 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The failure to make the requested findings may require reversal if their omission impedes appellate review of the revocation. *Joseph*, 3 S.W.3d at 639 (citing *Ford v. State*, 488 S.W.2d 793, 795 (Tex. Crim. App. 1972)). However, the trial court is not required to issue separate findings if the judgment or revocation order discloses the grounds for revocation found by the court. *See Joseph*, 3 S.W.3d at 640 (concluding that handwritten notations on the revocation order sufficed).[1]

Here, the record reflects that the trial court orally specified the particular probation conditions violated, and their factual basis, at the end of the revocation hearing, finding all of the alleged violations "true" except for one which was found "not true." The court's written judgment recites, "[t]he Court, after hearing all of the evidence for the State and the Defendant and argument of counsel, is of the opinion and finds that the Defendant violated the conditions of the Defendant's

---

[1] *See also Payne v. State*, No. 04-00-00659-660-CR, 2001 WL 540303, at *3 (Tex. App.—San Antonio May 23, 2001, no pet.) (not designated for publication) (judgment stating that "condition number one was violated" provided the information necessary to determine the basis of revocation, which satisfied due process); *Rivera v. State*, No. 04-99-00119-CR, 2000 WL 566989, at *1 (Tex. App.—San Antonio May 10, 2000, pet. ref'd) (not designated for publication) (judgment finding that defendant violated probation conditions "as set forth in State's Motion to Revoke Probation" and attaching copy of State's list of eight violations was sufficient to comply with request for findings); *McMahon v. State,* No. 07-06-0091-CR, 2007 WL 1323373, at *2 (Tex. App.—Amarillo Oct. 10, 2007, pet. ref'd) (not designated for publication) (findings were sufficient where trial court orally specified conditions violated at end of revocation hearing, and memorialized the violations in the written judgment); *Renteria v. State,* No. 08-02-0329-CR, 2004 WL 883176, at *2-3 (Tex. App.—El Paso Apr. 22, 2004, no pet.) (not designated for publication) (holding judgment was sufficient where it specified the conditions of probation violated, and the factual assertions underlying each violation).

community supervision as stated above;" the judgment listed the conditions violated by paragraph number and further referenced them "as set out in the State's motion to revoke." Thus, the record shows Reasor was afforded adequate notice of the grounds underlying the court's revocation, and his ability to prosecute an appeal was not diminished by the absence of further findings. Accordingly, Reasor's seventh issue is overruled.

## CONCLUSION

Based on the foregoing analysis, the trial court's judgment is modified to delete the payment of restitution, and, as modified, the judgment revoking Reasor's community supervision is affirmed.


Phylis J. Speedlin, Justice


PUBLISH