



## MEMORANDUM OPINION

No. 04-10-00396-CR

Jason **HERNANDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-7712
Honorable Ron Rangel, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Rebecca Simmons, Justice
            Steven C. Hilbig, Justice
            Marialyn Barnard, Justice

Delivered and Filed:  August 24, 2011

ABATED AND REMANDED FOR HEARING TO DETERMINE JUST AMOUNT OF
RESTITUTION

Appellant Jason Hernandez appeals his convictions for theft of over $1,500 and under

$20,000 and burglary of a building.  In his first two issues, Hernandez argues that the trial court

erred by denying his motion to suppress his video-recorded confession.  In his third issue,

Hernandez argues that the evidence is insufficient to support the non-specific amount of the trial

court's restitution order.  We overrule Hernandez's first two issues, but we set aside the

restitution order, abate the appeal, and remand the case for a hearing to determine a just amount of restitution.

## BACKGROUND

On April 23, 2007, Hernandez used a large rock to break into Petra's Boutique. He took several purses, shirts, and dresses (valued in excess of $13,000) from the store. The next day, while conducting surveillance on a house, San Antonio Police Detectives Guy Durden and Tony Arcuri encountered Hernandez and found some of the items he had stolen in his girlfriend's vehicle, which was parked in front of the house. Detectives Durden and Arcuri then handcuffed Hernandez in front of the girlfriend's three daughters. Hernandez admitted to the officers that he had stolen all of the items in the vehicle and asked that nothing happen to his girlfriend or her children.

Detectives Durden and Arcuri took Hernandez to the police station where Hernandez admitted during a video-recorded interview with Detective Durden that he had broken into Petra's Boutique and had stolen several purses and articles of clothing. He also told Detective Durden where many of the other items taken from Petra's Boutique could be found. Many of these items were returned to Petra Williams, the owner of Petra's Boutique.

The State charged Hernandez with burglary and theft. Hernandez moved to suppress his video-recorded statement, but the trial court denied his motion. During the guilt/innocence phase of the trial, Hernandez's video-recorded statement was admitted into evidence. Hernandez was sentenced to thirteen years' imprisonment, fined, and ordered to pay "restitution in full to Petra's Boutique." Hernandez appeals.

**MOTION TO SUPPRESS**

Hernandez complains that the trial court erred by denying his motion to suppress. In his first issue, he argues that Detective Durden obtained his video-recorded statement using improper promises. In his second issue, Hernandez complains that the State obtained the statement in violation of article 38.22 of the Code of Criminal Procedure.

## A. Standard of Review

We review a trial court's order on a motion to suppress under a bifurcated standard of review, "'affording almost total deference' to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor." *Martinez v. State*, 275 S.W.3d 29, 34 (Tex. App.—San Antonio 2008, pet. struck) (citing *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)). "We review *de novo* the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor." *Id.*; *see also Guzman*, 955 S.W.2d at 88–89. When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling if the record supports the finding. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006); *Martinez*, 275 S.W.3d at 34.

## B. Involuntary Statements

Under applicable federal and state law, a defendant's statement is admissible only if it is voluntarily given. *See* U.S. CONST. amends. V, XIV; *Arizona v. Fulminante*, 499 U.S. 279, 285–86 (1991); *Jackson v. Denno*, 378 U.S. 368, 376 (1964); TEX. CODE CRIM. PROC. ANN. arts. 38.21, 38.23(a) (West 2005); *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). In determining the voluntariness of a confession, a court considers the totality of the circumstances. *Fulminante*, 499 U.S. at 285–86; *Delao*, 235 S.W.3d at 239. "A statement is 'involuntary' . . .

only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *accord Martinez v. State*, 131 S.W.3d 22, 35 (Tex. App.—San Antonio 2003, no pet.). If a defendant claims that he gave a statement involuntarily, the State must prove by a preponderance of the evidence that the statement was given voluntarily. *Alvarado*, 912 S.W.2d at 211; *Martinez*, 131 S.W.3d at 35; *Diaz v. State*, 61 S.W.3d 525, 528 (Tex. App.—San Antonio 2001, no pet.).

## C. Improper Promises

A statement is involuntary if it is obtained by a positive promise of some benefit to the accused that is "made or sanctioned by someone in authority, and [is] of such an influential nature that it would likely cause a defendant to speak untruthfully." *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). After reviewing all of the evidence at Hernandez's suppression hearing, the trial court found that the totality of the circumstances indicated that Hernandez voluntarily gave his statement. The court also found that Detective Durden made no improper promise that likely led Hernandez to implicate himself falsely and that Hernandez's statement was not obtained by compulsion or persuasion.

Hernandez argues that these findings are erroneous because he testified at the suppression hearing that when he was arrested, Detective Durden made three threats or promises that resulted in his involuntary confession. Hernandez testified that he was told that if he "manned up" to the crime, then: (1) the State would charge him only with theft and not burglary; (2) the State would not charge his girlfriend; and (3) the Department of Family and Protective Services would not be called to take his girlfriend's children into custody. Conversely, Detectives Durden and Arcuri both testified that they never made any such promises or threats. Detective Durden testified that

when Hernandez was arrested, he initially accepted responsibility for stealing the clothes and other items and asked that nothing happen to his girlfriend or her three children. Durden further testified that he offered nothing to Hernandez in exchange for a confession. Detective Durden stated that it was his "perspective that [Hernandez] was accepting responsibility for what he did. If he truly was the person that this property belonged to and it wasn't her, again, that he was manning up to it, he didn't want her to get in trouble for it, so that's all." Detective Arcuri testified that Hernandez on his own initiative wanted to cooperate because he did not want his girlfriend to go to jail or her children to go to a shelter. Detective Arcuri testified that he told Hernandez that if Hernandez "manned up" and told him everything, he would not place his girlfriend under arrest that evening. He explained that he decided not to arrest Hernandez's girlfriend because he was not obligated by law to place her under arrest, her kids were present at the scene, and Hernandez offered to go to the police station and give a statement admitting what had happened.

Furthermore, Hernandez's video-recorded statement does not show that Detective Durden made any statement positively promising Hernandez anything in exchange for his testimony. During the interview, Detective Durden alluded to his prior conversation with Hernandez about what was in the best interest of his girlfriend's children. Detective Durden also told Hernandez that he was booking him only for possession of stolen property and not for burglary, but said that "whatever this adds up to is what you are going to jail for."

Although Hernandez's testimony at trial characterized the detectives' statements as extending promises in exchange for a confession, the detectives' testimony contradicted this account. Based on its assessment of the credibility of the witnesses, the trial court found that no promise was made to Hernandez that would have likely led Hernandez to implicate himself

falsely and that the totality of the circumstances supported the voluntary nature of Hernandez's statement. We must give great deference to this factual finding, which is supported by the evidence presented at the hearing. *See Guzman*, 955 S.W.2d at 88–89; *Martinez*, 275 S.W.3d at 34.

### D. Failure to Warn of Right to Terminate Interview

Hernandez next argues that the admission of his confession was improper because Detective Durden failed to inform him of his right to terminate the interview. For a defendant's oral statement to be admissible, article 38.22 of the Code of Criminal Procedure requires, *inter alia*, that the defendant be warned of his "right to terminate the interview at any time." *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2(a)(5), 3(a)(2) (West 2005); *accord Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). However, this requirement does not apply "to any statement which contains assertions of facts or circumstances that are found to be true and . . . establish the guilt of the accused, such as the finding of secreted or stolen property." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(c); *see also Cameron v. State*, 988 S.W.2d 835, 845 (Tex. App.—San Antonio 1999, pet. ref'd) (deciding that the defendant's statement that led police to find stolen item sufficiently established the reliability of the defendant's confession).

Detective Durden did not warn Hernandez during the video-recorded interview that he had the right to terminate the interview at any time. However, the trial court found that during the interview, "[Hernandez] provided . . . detail as to how and why the crime was committed. Stolen property was recovered as a direct result of the defendant's statement." The video-recorded statement reflects that Hernandez revealed to Detective Durden the identity of the person to whom he had sold several of the stolen items. According to Detective Durden's testimony, several items were retrieved from that person and returned to Petra Williams.

Hernandez's statement contained facts regarding the location of stolen property that were found to be true and led to the finding of the stolen items. Thus, under article 38.22, a warning that Hernandez had the right to terminate the interview was not a prerequisite to the admissibility of Hernandez's statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(c); *Cameron*, 988 S.W.2d at 845.

## RESTITUTION

Hernandez's third and final issue is that the evidence is insufficient to support the amount of restitution. The State responds that Hernandez failed to preserve his complaint for appeal[1] and the evidence was sufficient to support the full amount of loss that Petra Williams claimed.

### A. Standard of Review

We review a trial court's order of restitution for an abuse of discretion. *Reasor v. State*, 281 S.W.3d 129, 135 (Tex. App.—San Antonio 2008, pet. ref'd). "The court abuses its discretion when it acts in an arbitrary or unreasonable manner." *Id.*

### B. Applicable Law

Article 42.037(a) of the Code of Criminal Procedure provides in relevant part:

(a) In addition to any fine authorized by law, the court that sentences a defendant convicted of an offense may order the defendant to make restitution to any victim of the offense . . . . If the court does not order restitution or orders partial restitution under this subsection, the court shall state on the record the reasons for not making the order or for the limited order.

(b)(1) If the offense results in damage to or loss or destruction of property of a victim of the offense, the court may order the defendant:

(A) to return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property is impossible or impractical or is an inadequate remedy, to pay an amount equal to the greater of:

---

[1] Although Hernandez did not object at trial to the order of restitution, he may raise his complaint regarding the amount of restitution for the first time on appeal. *See Mayer v. State*, 309 S.W.3d 552, 554–56 (Tex. Crim. App. 2010); *Idowu v. State*, 73 S.W.3d 918, 921 (Tex. Crim. App. 2002); *Pfeiffer v. State*, No. 04-07-00462-CR, 2008 WL 3056837, at *3 (Tex. App.—San Antonio Aug. 6, 2008, pet. dism'd) (mem. op., not designated for publication).

> (i) the value of the property on the date of the damage, loss, or destruction; or
>
> (ii) the value of the property on the date of sentencing, less the value of any part of the property that is returned on the date the property is returned.

TEX. CODE CRIM. PROC. ANN. art. 42.037(a), (b)(1) (West 2006).

In determining the amount of restitution, the court must consider "the amount of the loss sustained by any victim" as well as "other factors the court deems appropriate." *Id.* art. 42.037(c). "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the prosecuting attorney." *Id.* art. 42.037(k). "The amount of restitution must be just, and it must have a factual basis within the loss of the victim." *Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999).

Hernandez complains that the amount of restitution—"restitution in full"[2]—is not supported by sufficient evidence because it was not reduced to a definite numerical amount. The State responds that "restitution in full" means that the trial court adopted the State's assertion that Petra's Boutique suffered a $13,002 loss. The State bases this assertion on the testimony of Petra Williams and on its exhibit showing the valuation of items stolen from Petra's Boutique.

Even if the State is correct that the trial court's oral pronouncement adopted the $13,002 figure, it is undisputed that many of the stolen purses and items of clothing were returned to Petra's Boutique. Without evidence that the items returned were of no value, Petra's Boutique did not suffer a $13,002 loss. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(c) (requiring a trial court to consider the amount of loss sustained by the victim); *id.* art. 42.037(k) (placing the burden of proof of the amount of loss on the State); *Gonzalez v. State*, 954 S.W.2d 98, 104–06

---

[2] Both Hernandez and the State agree that although the written judgment orders Hernandez to pay "$0.00," the trial court's oral pronouncement at sentencing—that Hernandez shall pay "restitution in full to Petra's Boutique"—controls. *See Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002) ("When the oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls.").

(Tex. App.—San Antonio 1997, no writ) (holding that restitution for the value of stolen plumbing supplies was improper because the stolen supplies had been returned to the victim).

To explain how Petra's Boutique suffered a $13,002 loss, the State attaches a pre-sentence investigation report (PSI) to its appellate brief to show that Petra Williams would be unable to sell any of the returned items of clothing. The record from Hernandez's punishment hearing reflects that the trial court had reviewed the PSI. However, the State insisted at the hearing that for the purposes of restitution, it was not relying on any evidence other than the exhibit detailing the list of items taken from Petra's Boutique.[3] Moreover, the PSI was not admitted into evidence and is, therefore, not contained in the appellate record. As such, we may not consider it. *See Ahmed v. State*, 04-07-00456-CR, 2008 WL 4425867, at \*4 (Tex. App.—San Antonio Oct. 1, 2008, no pet.) (mem. op., not designated for publication) ("The State argues on appeal that the restitution order is supported by the pre-sentence investigation report, and has attached a copy of the report to its brief. . . . [I]t was not admitted into evidence and thus is not contained in the appellate record; therefore, we may not consider it."). Because the evidence does not support the amount of restitution, it lacks a factual basis tied to Petra's Boutique's loss.

### CONCLUSION

Based on the foregoing analysis, we overrule Hernandez's first two issues relating to the inadmissibility of his confession, but we set aside the indefinite amount of restitution, abate the appeal, and remand the cause to the trial court for a hearing to determine a definite and just amount of restitution. *See Ahmed*, 2008 WL 4425867, at \*4; *cf. Barton v. State*, 21 S.W.3d 287, 290 (Tex. Crim. App. 2000) ("The proper procedure where the amount of restitution ordered as a

---

[3] Counsel for the State stated: "No evidence at this time with regard to restitution other than that that was admitted at trial. But I would remind the Court that the complainant's full list of losses was entered . . . during the course of the trial . . . . So that's what we would stand on with regard to restitution, although a figure is not given in the PSI. I think all we needed to do is look back at the exhibit, and she does have a total amount there . . . that was lost or damaged, that she is claiming restitution and that was . . . admitted in the course of the trial without objection."

condition of community supervision is not supported by the record is to abate the appeal, set aside the amount of restitution, and remand the case for a hearing to determine a just amount of restitution.").

Rebecca Simmons, Justice

DO NOT PUBLISH