

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00323-CR

Steven **BELTRAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 13, Bexar County, Texas
Trial Court No. 431439
The Honorable Monica A. Gonzalez, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Karen Angelini, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  July 15, 2015

AFFIRMED

Appellant Steven Beltran appeals the trial court's judgment adjudicating him guilty and sentencing him to one year in jail, suspended, and placing him on eighteen months' community supervision. On appeal, Beltran raises two issues, in essence contending the trial court erred in granting the State's motion to adjudicate and revoke. We affirm the trial court's judgment.

### BACKGROUND

After Beltran violated a protective order, the trial court placed him on deferred adjudication community supervision for a period of twelve months. According to conditions fifteen and sixteen

of his community supervision, Beltran was prohibited from contacting or attempting to contact his ex-wife or her boyfriend in person, verbally, telephonically, in writing, or in any other manner. Beltran's probation officer, Linda Navarro, testified she read the conditions of probation to Beltran, including the no contact provision, and he was aware he was not to contact his ex-wife or her boyfriend. Ms. Navarro explained to Beltran that if he inadvertently found himself in contact with his ex-wife or her boyfriend, he should immediately leave the area.

Less than a month after Beltran was placed on community supervision, his ex-wife and her boyfriend saw Beltran driving toward their vehicle. The couple testified Beltran made a U-turn and followed them. During this time, Beltran drove erratically and attempted to close the distance between the vehicles. Finally, the boyfriend pulled into a parking lot and parked his vehicle toward the street. Beltran passed by them slowly with his window down, gesturing at the couple with his middle finger — "throwing [them] the bird" — before driving off. The couple flagged down a police officer and reported the incident. The officer took their statements.

As a result of Beltran's actions, the State filed a motion asking the trial court to render an adjudication of guilt and revoke Beltran's community supervision. The trial court held a contested hearing. At the hearing, the couple testified as set out above. The officer who took the initial report and a detective also testified, relaying the information provided to them by the couple, which comported with the testimony provided by the couple at the hearing. The trial court also heard testimony from Beltran and his supporting witness. Beltran denied following his ex-wife and her boyfriend, claiming he was working as a sales representative at the time of the alleged contact and in that capacity, was at an automotive dealership meeting with the parts and service director. The parts and service director corroborated Beltran's testimony. However, the witness admitted he had known Beltran since 1998, and Beltran had taken him out socially over the years as many vendors do.

After the hearing, the trial court prepared findings of facts and conclusions of law, finding Beltran's ex-wife and her boyfriend credible, but finding Beltran's testimony was not credible and his corroborating witness unconvincing. As to Beltran's witness, the trial court noted there were no records to substantiate his claims and the court "was not convinced that this witness' [sic] alleged recollection of events was accurate and felt that there was a possibility the dates and time frames presented were incorrect."

As a result of its findings and conclusions, the trial court adjudicated Beltran guilty of the original charge of violating a protective order, revoked his deferred adjudication community supervision, and sentenced Beltran to twelve months' confinement. However, the trial court suspended the sentence and placed Beltran on community supervision for eighteen months. Beltran then perfected this appeal.

### ANALYSIS

Beltran contends the trial court erred in adjudicating him guilty and revoking his deferred adjudication community supervision because: (1) the State failed to prove by a preponderance of the evidence he made contact with his ex-wife and her boyfriend; and (2) the trial court impermissibly enlarged the State's motion to adjudicate and revoke. As to his second contention, Beltran claims the trial court relied upon attempted contact as ground for adjudication and revocation — a ground that was not pled in the State's motion — to grant the State's motion, adjudicate him guilty, and revoke his probation. We disagree with Beltran's interpretation of the trial court's ultimate conclusion, and hold the trial court did not err in concluding Beltran contacted his ex-wife and her boyfriend in violation of the terms of his deferred adjudication, as alleged by the State, and there was sufficient evidence to support the trial court's conclusion.

### *Standard of Review*

A trial court's decision to proceed to an adjudication of guilt and revoke deferred adjudication community supervision is reviewed under the same standard as a revocation of regular community supervision, i.e., abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013); *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, Sec. 5(b) (West Supp. 2014). An order revoking community supervision must be supported by a preponderance of the evidence. *Hacker*, 389 S.W.3d at 865; *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). This means that a greater weight of the credible evidence would create a reasonable belief that the defendant had violated a condition of his community supervision agreement. *Hacker*, 389 S.W.3d at 865; *Rickels*, 202 S.W.3d at 764.

The trial court is the sole judge of the credibility of the witnesses and the weight given to their testimony, and the evidence is reviewed in the light most favorable to the trial court's ruling. *Hacker*, 389 S.W.3d at 865; *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). A single violation of community supervision is sufficient to support revocation. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *Reasor v. State*, 281 S.W.3d 129, 131 (Tex. App.—San Antonio 2008, pet. ref'd). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Reasor*, 281 S.W.3d at 132; *Cardona*, 665 S.W.2d at 493–94.

### *Application*

The terms of Beltran's deferred adjudication community supervision included the following two conditions:

15. General Order: You will neither contact nor attempt to contact [EX-WIFE] nor any of his/her family members in person, verbally, telephonically, in writing or in any other manner, and should you find yourself inadvertently in contact with said individual, you will immediately leave and not threaten, assault, or verbally abuse him/her.

16. General Order: You will neither contact nor attempt to contact [EX-WIFE'S BOYFRIEND] nor any of his/her family members in person, verbally, telephonically, in writing or in any other manner, and should you find yourself inadvertently in contact with said individual, you will immediately leave and not threaten, assault, or verbally abuse him/her.

In its motion to adjudicate and revoke, the State alleged Beltran violated these conditions by making contact with his ex-wife and her boyfriend. Although Beltran was also prohibited from attempting to contact his ex-wife and her boyfriend, the State did not allege a violation by virtue of attempted contact, merely by actual contact. Beltran contends there is no evidence he actually contacted his ex-wife and her boyfriend as alleged, and the trial court found nothing more than attempted contact, which was not alleged.

Beltran directs this court to the final paragraph in the trial court's conclusions of law. In that paragraph, the trial court states "the defendant has at very least attempted to contact the parties in violation of conditions 15 and 16." Beltran suggests this was the trial court's only conclusion that led it to grant the State's motion. We disagree.

In the preceding paragraph of its conclusions, the trial court specifically stated: "This court is not convinced that because [ex-wife] and [boyfriend] did not respond in kind to the defendant's attempt to harass and intimidate the complainants *that contact did not occur*." (emphasis added) This sentence constitutes a finding that *contact* occurred — there was not merely an attempt, but actual contact in some manner — Beltran was precluded from contacting either party "in any other manner." Removing unnecessary phrases from the trial court's conclusion, we are left with the following: "This court is not convinced . . . that contact did not occur." We interpret this as a conclusion by the trial court that the State established by a preponderance of the evidence that contact occurred, and we agree.

The evidence, taken in a light most favorable to the verdict, shows that when Beltran spotted his ex-wife and her boyfriend, he made a U-turn and followed them until they pulled off

the road. Thereafter, Beltran slowly passed by them, making an obscene gesture specifically at the couple. As noted by the trial court in its findings and conclusions, the term "contact" is not statutorily defined, and thus must be understood as ordinary usage allows, as in common speech. *See* TEX. CODE CRIM. PROC. ANN. art. 3.01 (West 2015) (stating that words, phrases, and terms used in Code of Criminal Procedure are to be taken and understood in their usual acceptation in common language, except where specially defined); *Aschbacher v. State*, 61 S.W.3d 532, 539 (Tex. App.—San Antonio 2001, pet. ref'd) (holding that where term "wrong" was not defined by Penal Code, it was to be understood as ordinary usage allows, permitting jurors to give it any meaning accepted in common speech). The trial court used a dictionary to define contact as "be in or establish communication with." Given that definition and the evidence, we hold the obscene gesture made by Beltran toward his ex-wife and her boyfriend was evidence of an actual communication by Beltran in violation of conditions fifteen and sixteen as alleged by the State. The trial court's conclusion that Beltran's actions also constituted attempted contact is of no moment.

### CONCLUSION

Based on the foregoing, we hold the trial court concluded Beltran violated conditions fifteen and sixteen of his deferred adjudication community supervision by contacting his ex-wife and her boyfriend and there was sufficient evidence to support the trial court's conclusion. Accordingly, we overrule Beltran's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish