

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DAVID ANTHONY CHAPA, | § | No. 08-23-00022-CR |
| Appellant, | § | Appeal from the |
| v. | § | 38th Judicial District Court |
| THE STATE OF TEXAS, | § | of Real County, Texas |
| Appellee. | § | Cause No. 2017-1288-DR |

## MEMORANDUM OPINION

Appellant David Anthony Chapa appeals the trial court's order revoking community supervision.[1] The State moved to revoke Chapa's community supervision in two separate cases— this one a 2016 indictment in Real County and the other a 2019 indictment in Uvalde County— alleging violation of Chapa's community supervision in both matters by commission of the new offense of unauthorized use of a motor vehicle. A hearing was held combining both matters, and in each appeal, Chapa raises one issue: sufficiency of the evidence to sustain the finding that he

---

[1] This case was transferred from our sister court in San Antonio pursuant to the Texas Supreme Court's docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

violated the terms of his community supervision by committing a new offense. Today we issue opinions in the appeals of both, and in both matters, we affirm.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

On June 28, 2017, the grand jury indicted Chapa with intentionally and knowingly operating a motor vehicle without the effective consent of the owner, Cynthia Carmona. The one-count indictment included two enhancements due to prior offenses. On January 6, 2022, Chapa entered a guilty plea and the trial court assessed punishment at eight years' confinement probated for eight years. The trial court imposed conditions of community supervision that included Condition No. 1, "Commit no offense against the laws of this or any State or of the United States," and Condition No. 14, "Pay [certain fees] to and through the Community Supervision and Corrections Department . . . ."

On February 24, 2022, the State moved to revoke Chapa's community supervision. The State alleged Chapa violated the terms of his community supervision by committing a new offense of unauthorized use of a motor vehicle on or about February 15, 2022, and by failing to remain current in payment of required fees, with a delinquency of $160 as of February 22, 2022.

On March 24, 2023, the trial court held a hearing on the State's motion to revoke Chapa's community supervision. Chapa pleaded "not true" to both alleged violations.

The State first called Emily Kennedy, a community supervision officer. She described she prepared a violation report after she received a DPS flash notice that Chapa had been arrested. After she requested the offense report, she learned he had been accused of unauthorized use of a vehicle in Uvalde. On cross-examination, she further described that Chapa had an arrearage of

---

[2] We issue our opinion on the appeal of the second revocation on this same date in *Chapa v. State*, No. 08-23-00018-CR, (Tex. App.—El Paso April 26, 2024, no pet. h.).

$120 for nonpayment of probation fees for January and February of 2022. As she recalled, he was in custody during that time. When asked whether Chapa was employed at the time the motion to revoke was filed, Kennedy responded that Chapa had told her his version of why he was arrested and that he was helping his grandmother.

The State next called Carmen Chapa, who testified that she was Chapa's grandmother.[3] Carmen Chapa worked as one of three caregivers assisting John Hardwick. The Hardwick family had known her for a long time as she had previously cared for Hardwick's wife. She more recently cared for Hardwick for about a year. She did things like cook meals because Hardwick was sick and could not do much himself.

On February 15, 2022, Carmen Chapa and Hardwick had gone to the grocery store and on the way back she picked up her grandson, Chapa, to help her with unloading groceries. She testified she brought Chapa on to work with her because she needed help after damaging her knee and recovering from an illness. She claimed that other caregivers were unavailable to assist her, or they not willing to work that day. Carmen Chapa asked Hardwick if her grandson could help her. Carmen Chapa described that Chapa cooked, cleaned, and "[did] everything" for Hardwick when he helped her with her caregiving. After all the groceries were unloaded, she realized their purchase of Cokes was missing or left behind. Chapa said, "I'll go get them."

When Carmen Chapa next looked for Chapa, she could not find him. When she looked towards the left side of the house, she realized the truck was no longer there. She assumed at that moment that Chapa had taken it.

---

[3] For clarity, we refer to Appellant David Anthony Chapa as "Chapa," and to his grandmother, Carmen Chapa, by both her first and last name.

When asked by the State whether her grandson had authorization to drive the truck, either from her, John Hardwick, or Stephen Hardwick, she answered that "only the people that work for him could drive the truck, but see, [Chapa] was working for him too." At that point, she explained that she told Stephen Hardwick that Chapa was going to be working at the home because her knee had a fracture and she needed help. After Stephen agreed, he also told her that Chapa should write his time on the calendar to ensure he got paid.[4] She explained that Stephen regularly took charge of Hardwick's caregivers. Adding to her testimony, Carmen Chapa described that she told Chapa he could drive the truck around Hardwick's home, but not outside the gate.

When asked by the State what she did immediately after noticing that Chapa had left with the truck, Carmen Chapa answered that she called Hardwick's other son, who is also named John Hardwick. She reported the truck was gone. When he asked who took it, she answered, "And I said my grandson." She explained she reasoned that "only the people that he had there could drive the truck." Carmen Chapa testified that she also called Constable Chisolm and reported the truck was missing and Chapa had taken it. On direct, she also described that she later talked with Chapa. He told her he took the truck because he had seen that everyone taking care of Mr. Hardwick could drive the truck. Carmen Chapa did not know where her grandson took the vehicle that day.

On cross examination, Carmen Chapa testified that people who worked for Hardwick were allowed to drive Hardwick's truck. She confirmed that Chapa was working for Hardwick at the point when the incident took place. She agreed that everyone working for Hardwick would be allowed to use the truck. On re-direct, Carmen Chapa testified she did not give Chapa permission to drive the truck. And she confirmed that the caregivers were only allowed to drive for Hardwick's necessities.

---

[4] Later in her testimony, Carmen Chapa testified this communication was with Hardwick's son John.

4

Next, Sheriff Nathan Johnson testified. He received a call about a possible stolen vehicle on the night of February 15, 2022. He spoke with Steve Hardwick, Hardwick's son, and requested information identifying the truck and wanted to assure that Steve had power of attorney to act on behalf of the owner of the vehicle. Steve gave him the requested information along with GPS tracking information letting him know the truck's current location.

The GPS information eventually indicated the truck had become stationary. Sheriff Johnson located the truck, and when he found Chapa inside, he appeared to be in a state of "not full awareness." Chapa told Sheriff Johnson he had driven to Knippa to purchase Xanax, and he had consumed one pill. Chapa said he took the vehicle because he needed to get some Xanax.

Stephen Hardwick testified that he administered his father's property because he had dementia and Stephen was the decisionmaker on his father's affairs. His brother John had no control over or contact with the employees assisting his father, and he would have been surprised if his brother John put someone on Hardwick's payroll. The employees knew his siblings, but it would be atypical for anyone to contact his brother John to inform him that Chapa would be working for his father. Stephen described that Chapa had been helping his grandmother with her work for a week or two. Stephen gave Chapa a little money for helping his grandmother, "out of the goodness of [his] heart[,]" but he did not intend it to be for employment. Stephen also testified that he had entered into some oral contracts with some of his father's caregivers, but they did not include permission to use the truck. Stephen confirmed he had no formal agreement with Chapa.

To Stephen's knowledge, no one aside from him gave the employees permission to use Hardwick's truck. When Stephen did give verbal authorization to use the truck, he would ask the caregiver for a copy of their driver's license. He would send it to the insurance company to be sure they were insured. He clarified that when he gave verbal authorization to a caregiver to use the

5

truck, he limited the use of the vehicle such that it was for his father's necessities only. He never gave such authorization to Chapa. Stephen Hardwick testified that on February 15, 2022, Carmen Chapa contacted him to let him know the truck had been stolen. After he received that call, he contacted the sheriff to let him know what was going on.

Chapa called no defense witnesses, nor did he testify.

At the conclusion of the hearing, the trial court found not true the allegation of nonpayment of fees, but found it true that Chapa had committed the offense of unauthorized use of a motor vehicle in violation of the first term of his community supervision. The trial court revoked Chapa's community supervision and imposed punishment at eight years' confinement in the Texas Department of Criminal Justice, ordering that the sentence run concurrently with the sentence in the Uvalde County case, and a $300 fine.

Chapa filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's order revoking community supervision for an abuse of discretion. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)). A trial court does not abuse its discretion unless its decision is so arbitrary as to be outside the zone of reasonable disagreement. *Hernandez v. State*, 387 S.W.3d 881, 888 (Tex. App.—San Antonio 2012, no pet.).

In a revocation of community supervision, the State bears the burden of proving by a preponderance of the evidence that the accused violated a condition of his community supervision. *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). The State satisfies this burden when the greater weight of the credible evidence creates a reasonable belief that the accused

violated a condition of his community supervision. *Id.* at 865 (quoting *Rickels*, 202 S.W.3d at 764). In reviewing the evidence, we indulge all reasonable inferences in favor of the trial court's ruling. *Reasor v. State*, 281 S.W.3d 129, 131–32 (Tex. App.—San Antonio 2008, pet. ref'd). If the evidence supports a single violation alleged by the State, we must sustain the trial court's judgment revoking community supervision. *Id.* at 131.

The Texas Penal Code provides that "[a] person commits [the offense of unauthorized use of a vehicle] if he intentionally or knowingly operates of another's . . . motor-propelled vehicle without the effective consent of the owner." Tex. Penal Code Ann. § 31.07(a).

## ANALYSIS

Chapa presents one issue on appeal, arguing the evidence presented at his revocation hearing was insufficient to sustain the trial court's finding of true that he committed the offense of unauthorized use of a motor vehicle. Chapa claims the State failed to establish: (1) that he did not have permission to drive the vehicle, and (2) that he was acting outside his employment.[5]

As an initial matter, the unauthorized vehicle statute does not include an element that would require the State to prove that Chapa was acting outside the scope of his employment. With respect to the issues raised by Chapa on appeal, the State was required to prove by a preponderance of the evidence only that Chapa was not authorized to use Hardwick's vehicle. *See Hacker*, 389 S.W.3d at 864–65; Tex. Penal Code Ann. § 31.07(a).

---

[5] The State has not filed a brief. This appeal was twice abated before Chapa filed a brief. During the second abatement, Chapa submitted a brief, triggering the State's 30-day deadline to file its brief. *See* Tex. R. App. P. 38.6(b). Sixteen days after the deadline to file its brief, the State requested a 90-day extension. We granted a 60-day extension. The State did not file its brief within this timeframe. At that time, we notified the State the case would be set for submission on the record and Chapa's brief unless the State's brief and a motion to extend the time to file it were received by March 10, 2024. Again, the State did not file a timely brief or a motion to extend. On March 12, 2024, the State filed another request for a 90-day extension, which we denied, stating the case would be decided on the record and Chapa's brief unless, before the issuance of our decision, the State filed its brief and a motion for extension of time to file it. As of the time this opinion was issued, the State had not filed a brief or a motion to extend.

7

Turning to the evidence presented at the revocation hearing, Chapa's grandmother equivocated on the issue of whether Chapa had permission to drive the truck. Although she testified that "[she] told him he could drive around the area where Mr. Hardwick lived," she also said she told him "but not outside the gate," though later she testified that she did not give Chapa permission to drive the truck. Carmen Chapa's actions just after the incident also signaled her own distress about the missing truck. Immediately upon realizing Chapa was gone with the truck, she called one of Hardwick's sons and a constable to let them know the truck was missing. It is reasonable to conclude that if Carmen Chapa knew Chapa had permission to drive the truck, there would have been no need to inform Stephen and the constable about any irregularity.

Stephen contradicted Carmen Chapa on the issue of whether Chapa was employed as a caregiver for his father. Though Carmen Chapa testified that Chapa was working for Hardwick, Stephen testified he did not employ Chapa to care for Hardwick nor give him authorization to use the truck.

Even if Chapa mistakenly believed he was included within the group of employees who were allowed to use the truck, Stephen and Carmen Chapa both verified that the caregivers were only allowed to use the truck to tend to Hardwick's necessities. Chapa himself admitted to the sheriff that he had taken the truck not for necessities but to purchase Xanax for himself.

We defer to the trial court's role as the sole judge of determining the credibility of the witnesses at the hearing and reconciling conflicts in their testimony. *See Smith v. State*, 587 S.W.3d 413, 419 (Tex. App.—San Antonio 2019, no pet.). Based on the testimony, the trial court reasonably concluded that Chapa did not have authorization to use Hardwick's truck, and, even if he believed he was employed, he did not use the truck in the manner in which employees were authorized to use it. Reviewing the evidence in the light most favorable to the trial court's ruling,

8

together with reasonable inferences therefrom, we conclude the greater weight of credible evidence supports the trial court's reasonable conclusion that it is more likely than not that Chapa violated Condition No. 1 of his community supervision by the unauthorized use of a motor vehicle. *See Reasor*, 281 S.W.3d at 131–32; *see also Gregg v. State*, No. 05-13-00109-CR, 2014 WL 1577017, at * 5 (Tex. App.—Dallas Apr. 21, 2014, no pet.) (mem. op., not designated for publication) (affirming revocation based on new offense of unauthorized use of a motor vehicle). The evidence is thus sufficient to support the trial court's judgment revoking Chapa's community supervision. *See Hacker*, 389 S.W.3d at 864-65; *Smith*, 587 S.W.3d at 420 (affirming revocation based on commission of new offense).

We overrule Chapa's sole issue.

## CONCLUSION

We affirm the trial court's judgment revoking Chapa's community supervision.


GINA M. PALAFOX, Justice

April 26, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)