Renita Sue BARNES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–06–00600–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 31, 2007.

Rehearing Overruled Sept. 10, 2007.

Bryan K. Savoy, Houston, TX, for appellant.

William J. Delmore III, Dan McCrory, Assistant District Attorneys, Houston, TX, for appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

**OPINION**

SHERRY RADACK, Chief Justice.

A jury convicted appellant, Renita Sue Barnes, of class-A misdemeanor criminal mischief for inflicting damage with a pecuniary loss of more than $500, but less than $1,500, on a vehicle owned by the complainant, Jim Gawerc, by striking the vehicle with a tire jack. *See* Tex. Pen.Code Ann. § 28.03(a)(1), (b)(3)(A)(i) (Vernon

Supp.2006). The trial court placed appellant on community supervision for one year and certified her right to appeal. In three points of error, appellant challenges the legal and factual sufficiency of the evidence to establish between $500 and $1,500 in damages to complainant's car and the denial of her motion for directed verdict on that issue. We affirm.

### Background

Gawerc and appellant had interacted briefly during the months before the criminal-mischief incident. These interactions took place at a house owned by Gawerc's mother. Appellant was occupying the house with her boyfriend, but without Gawerc's mother's permission. Gawerc had gone to the house twice to encourage appellant to leave, but did not succeed. On his second attempt, Gawerc summoned police because of appellant's outbursts, and she was handcuffed and arrested.

On the afternoon of the offense, Gawerc and his mother drove to the house in his vehicle, a 2001 silver Mercedes sports utility vehicle (SUV), to attempt once again to get appellant to leave. Gawerc's mother had the ownership papers for the house in her possession. The Gawercs had telephoned police to ask for help in ousting appellant and her boyfriend from the house. The Gawercs arrived at the house and drove part way up the driveway to wait for the police.

Before the police arrived, appellant came out of the house. She got into her car, which was also parked in the driveway, waited briefly before honking the horn, and backed out of the driveway onto the street. Gawerc also backed out onto the street. Gawerc's and appellant's cars were facing in the same direction, but on opposite sides of the driveway. Gawerc turned his engine off while continuing to wait for police to arrive, but appellant got out of her car. She approached Gawerc's vehicle and began shouting and banging on the closed car window on the driver's side. After screaming that she had a gun and would kill both Gawerc and his mother, appellant returned to her car, opened its trunk, removed the car jack, returned to Gawerc's vehicle, lifted the car jack, and used it twice to strike the hood of Gawerc's SUV. She returned to her car, replaced the car jack in her trunk, and came back to the driver's side of Gawerc's vehicle, where she began again to pound on the closed window and to threaten Gawerc and his mother. When Gawerc lowered the window, because he feared appellant would break it, she thrust her arm inside the car and hit Gawerc on the forehead with her fist. She returned to her car, and a police officer, Officer E. Brooks, arrived shortly thereafter.

Officer Brooks interviewed appellant, Gawerc, and his mother at the scene. After initially handcuffing Gawerc, Brooks arrested appellant. According to appellant, Gawerc hit her with the door of his car when he opened it, which caused her upper lip to bleed. She returned to her car to get paper towels from the trunk to stop the bleeding. As she was leaning into the trunk, she heard Gawerc rev his engine and feared he would crush her against the trunk end of her car. She then grabbed the tire jack from her trunk and used it twice to strike the hood of Gawerc's SUV. Appellant admitted striking the hood twice, but claimed she did this in self-defense.[1] Officer Brooks inspected the damage to Gawerc's hood and asked to look for the jack in appellant's trunk, but she would not grant him permission.

Officer Brooks has been a police officer for ten years and has extensive experience

---

1. The jury charge included an instruction on self-defense.

with criminal mischief cases. He investigates "a lot" of criminal mischief case—about 20 incidents weekly. Based on his life and work experience, Brooks is able to estimate the extent of value of property and how much repair will cost. While at the scene, he spoke with Gawerc and fellow officers about the damage to Gawerc's vehicle. At trial, he estimated that the cost of repairing the damage to the hood of Gawerc's vehicle at "about $1,500." In addition to relying on his personal experience, Brooks spoke to two other officers at the scene about estimating the damage to Gawerc's SUV.

Gawerc also testified concerning the value of the damages. He took the damaged SUV to a body shop in his neighborhood, on Bissonnet Street. After referring to the body shop's written estimate to refresh his memory on the damages issue, Gawerc testified that the body shop's repair estimate was $1,530.01, with tax included, and $1,415.40 before tax. The estimate was not introduced into evidence at trial, but photographs of the damage done to the hood of the SUV were admitted into evidence.

### Sufficiency of Evidence— Proof of Damages

#### A. Standard of Review

Appellant's first two points of error challenge, respectively, the legal and factual sufficiency of the evidence to establish the damages element of her class-A misdemeanor conviction for criminal mischief; appellant contends that the evidence does not establish the cost of repairs for the damage to Gawerc's vehicle. In her third point of error, appellant contends that the trial court erred by denying her motion for instructed verdict on the same issue at the close of the State's case. The latter contention essentially repeats the first point of error, in which she challenges the legal

sufficiency of the evidence. *See Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim. App.1990) (stating that challenge to denial of directed or instructed verdict presents legal-sufficiency challenge). Accordingly, we address appellant's first and third points of error together, as legal-sufficiency challenges.

To evaluate the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Drichas v. State,* 175 S.W.3d 795, 798 (Tex. Crim.App.2005). The standard is the same for both direct and circumstantial evidence cases. *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim.App.1995). In assessing the evidence under this standard, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

In contrast, when conducting a factual-sufficiency review, we view all of the evidence in a neutral light. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997). We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). Under the first prong of *Johnson,* we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim. App.2006). Under the second prong of *Johnson,* we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolu-

tion of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting a factual-sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). We may not reweigh the evidence and substitute our judgment for the fact finder's determination. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). The fact finder alone determines what weight to place on contradictory testimonial evidence because that determination depends on the fact finder's evaluation of credibility and demeanor of the witnesses. *Cain,* 958 S.W.2d at 408–09. As the determiner of the credibility of the witnesses, the fact finder may choose to believe all, some, or none of the testimony presented. *Id.* at 407, n. 5.

## B. Proof of Damages in Class A–Misdemeanor Criminal Mischief Cases

■ A person commits the offense of criminal mischief if she damages or destroys another person's tangible property without that person's consent. TEX. PEN. CODE ANN. § 28.03(a)(1). The "value of pecuniary loss" or "cost of replacing or repairing damaged property" is a crucial element of the offense because it forms the basis of punishment assessed. *Elomary v. State,* 796 S.W.2d 191, 192–93 (Tex.Crim. App.1990); *Jones v. State,* 377 S.W.2d 205, 206 (Tex.Crim.App.1964); *see In re M.C.L.,* 110 S.W.3d 591, 594 (Tex.App.-Austin 2003, no pet.). When pecuniary loss is more than $500, but less than $1,500, as charged in the information here, a person commits a Class A misdemeanor. TEX. PEN.CODE ANN. § 28.03(b)(3)(A)(i).

The State must establish the fair market value of the cost of repair or restoration, but the property owner is not required to have actually repaired the damaged property. *Elomary,* 796 S.W.2d at 193–94; *Espinoza v. State,* 955 S.W.2d 108, 112 (Tex. App.-Waco 1997, pet. ref'd).

The correct measure of loss for property that has not been destroyed and may be repaired is the cost of repairing or restoring the damaged property within a reasonable time. TEX. PEN.CODE ANN. § 28.06(b). In accordance with section 28.06(b), the jury charge in this case instructed that, "The amount of pecuniary loss of the property is the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred."

■ "[O]ff-the-wall," opinion testimony, or a mere estimate of cost of repair, "*without further evidence,*" is not sufficient to prove the cost of repairs for a criminal-mischief conviction. *Elomary v. State,* 796 S.W.2d at 193 (emphasis in original) (quoting with approval and contrasting with reversal merited in *Sebree v. State,* 695 S.W.2d 303, 305 (Tex.App.-Houston [1st Dist.] 1985, no pet.)); *see also English v. State,* 171 S.W.3d 625, 629 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (holding dealer's estimate insufficient to support state-jail felony for criminal mischief when complainant who paid only minimal part of repair cost could not establish amount actually paid by complainant's insurance carrier); *In re M.C.L.,* 110 S.W.3d at 595–96 (holding evidence insufficient to establish value of damage to county police vehicles, despite testimony by complainant referring to $1,468 estimate, because cost of repairs actually completed was only $240 and, thus, less than $500 required for Class–A misdemeanor alleged); *cf. Nixon v. State,* 937 S.W.2d 610, 612–13 (Tex.App.-Houston [1st Dist.] 1996, no pet.) (before

the court en banc) (holding that trial court erred by permitting neighbor to testify concerning damage caused by defendant's driving pickup truck into rear of home because neighbor was not qualified as expert, but also holding that error in admitting evidence harmless).[2]

An estimate concerning pecuniary loss is not always insufficient, however. To defend the legal-sufficiency challenge to the conviction for criminal mischief in *Elomary*, the State had to show legally sufficient evidence of over $200 and less than $750 in pecuniary loss to the complainant, who conceded at trial that the repair work done on her Jaguar "could have been less than $200." *Elomary*, 796 S.W.2d at 192. Applying the legal-sufficiency standard, the Texarkana Court of Appeals had determined that no evidence supported the judgment of conviction. *See id.* at 193 (citing *Elomary v. State*, 778 S.W.2d 909, 910 (Tex.App.-Texarkana 1989)). In reversing this holding and affirming the conviction, the Court of Criminal Appeals re-emphasized that the State need not prove that the damaged property was actually repaired. *Id.* Quoting with approval this Court's holding in *Sebree*, that an estimate or an opinion is insufficient, *without further evidence*, to prove the cost of repairs under section 28.06(b) of the Penal Code, *Sebree*, 695 S.W.2d at 305, and referring to additional trial testimony by the complainant's insurance adjuster, who estimated the cost of repairs at $518.40, the court concluded that the evidence was legally sufficient to support the conviction. *Elomary*, 796 S.W.2d at 192–93.

In *Elomary*, the Court of Criminal Appeals expressly approved this Court's *Sebree* ruling that lay opinion is legally insufficient, standing alone, to establish pecuniary loss in a criminal mischief chase, when the opinion amounts to an incompetent individual's "merely stating his opinion or conclusion what the amount of the damages might be, or stating from hearsay what someone else said what the damages might be". *Id.* at 193–94 (approving *Sebree*, 695 S.W.2d 303, 305). In contrast to *Sebree*, the record developed in *Elomary* demonstrated that the insurance adjuster who testified was a qualified expert witness who could establish the fair market value of the cost to repair the complainant's Jaguar. *Id.* at 194.

Similarly, a complainant's testimony may be sufficient, without additional evidence, to support the pecuniary loss, or value, element of a conviction for criminal mischief, as the Fort Worth Court of Appeals recognized recently in an unreported opinion. *Barnstein v. State*, No. 2–04–442–CR, 2006 WL 59400 (Tex.App.-Fort Worth, Jan. 12, 2006, pet. ref'd). After a jury convicted Barnstein as a party to the offense of shooting the complainant's red and white Hereford bull, Barnstein argued on appeal that the evidence was factually insufficient to show that the market value of the bull was more than $1,500, as the State had alleged. 2006 WL 59400 at *5. Rejecting this contention, our sister court held that the evidence of pecuniary loss was factually sufficient, based on testimony by the complainant whose bull had been killed, who testified that she was a breeder, that she had purchased the bull two years before trial for $1,500, that the value of the bull had increased in value since then, and that the bull produced low-weight calves, which increased the bull's value because low-weight calves caused less difficult births for breeding cows. *Id.* Given the indicia of the complainant's knowledge through this testimony, our sister court concluded that the evidence was

---

2. Appellant has asserted no evidentiary challenges on appeal.

factually sufficient to support a minimum value of $1,500 for the bull. *Id.*

The record in this case does not show that the repairs to Gawerc's vehicle had been completed when he testified at trial, and this was not required, as clarified by *Elomary*, 796 S.W.2d at 193. *See Sebree*, 695 S.W.2d at 305. As this Court reasoned in *Sebree*, requiring the State to establish the exact amount paid and to whom would unduly burden both the complainant and the State. *Sebree*, 695 S.W.2d at 305. When repairs have been made, and the complaining witness testifies at trial, as occurred in *Sebree*, *English*, and *In re M.C.L.*, evidence of actual cost— or the lack of that evidence—necessarily has bearing on testimony concerning estimates. *See Sebree*, 695 S.W.2d at 305 (holding that complainant's testimony failed to establish connection between her estimate of damages to vehicle and her undisclosed cost of completed repair); *English*, 171 S.W.3d at 629 (also noting disparity between dealer's $2,134.41 estimate for repair to vehicle and complainant's partial payment of $50 toward repair costs; further noting lack of evidence of amount paid by insurer); *In re M.C.L.*, 110 S.W.3d at 595–96 (holding evidence insufficient to support class-A misdemeanor conviction, for $500 cost of repair, when only proof offered showed $240 actual cost and $1,468 estimate). This case also differs from *Nixon*, in which we resolved a challenge to improperly admitted evidence of repair cost, rather than legal and factual sufficiency challenges. *Nixon*, 937 S.W.2d at 612.

When, as here, no evidence of actual cost is available from records of completed repairs, the State must necessarily rely on testimony based on estimates, to which *Elomary* offers guidance. *See Elomary*, 796 S.W.2d at 194 (re-emphasizing that State need not establish that repair work

took place). The evidence that proved dispositive of the legal-sufficiency challenge in *Elomary* consisted of unchallenged testimony by the insurance-claims adjuster who inspected the complainant's Jaguar shortly after it was damaged and estimated the market value of the cost of repair at $518.40. *Elomary*, 796 S.W.2d at 192. Noting that the adjuster "was shown to be qualified to give his expert opinion," *id.* at 194, and cautioning that the differences between lay, "off-the-wall" and expert opinion testimony "should always be kept in mind," *see id.* at 193–94, the court fell short of requiring the State to present expert testimony to establish the repair cost element required by section 28.06(b) of the Penal Code. *Elomary*, 796 S.W.2d at 193–94. As the Court of Criminal Appeals has recognized, a "distinct line ... between lay opinion and expert testimony" does not exist. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex.Crim.App.2002).

Two lay witnesses testified concerning the cost of repair to Gawerc's 2001 Mercedes SUV. Gawerc testified, at first vaguely, but then precisely, on refreshing his memory based on an estimate of repair cost that he received from a body shop in his neighborhood on Bissonnet, that the before-tax estimate was $1415.40 and that the estimate, including tax, was $1530.01. Appellant objected to permitting Gawerc to refresh his memory by referring to the estimate itself, but has not challenged the trial court's ruling on appeal.

But, this case does not involve a bare estimate *"without further evidence,"* *see Elomary*, 796 S.W.2d at 193, because, as in *Elomary*, an additional witness testified to substantiate the State's burden to establish repair cost. When asked how he "goes about estimating [ ] damage," Officer Brooks replied that he relied on both his life experience and his ten years' experience on the job: "[B]eing in the depart-

ment for as long as I have, I can pretty much estimate just about anything and how much damage it's caused, the value of it." Brooks had been an officer for ten years and investigates an average of 20 criminal mischief cases weekly, which he described as "a lot." He knew the significance of varying levels of damage estimates, because these will determine the degree of offense, which can range from class-C misdemeanor to felony. After speaking with Gawerc and with others at the scene, whom Brooks identified by name and who own similar vehicles "of that caliber," Officer Brooks estimated the value of Gawerc's loss at $1,500.

■ Case law recognizes that police officers may properly testify concerning knowledge acquired through experience. *See Fairow v. State*, 943 S.W.2d 895, 898–99 (Tex.Crim.App.1997) (citing TEX.R. EVID. 701, 602); *Austin v. State*, 794 S.W.2d 408, 410–11 (Tex.App.-Austin 1990, pet. ref'd) (recognizing that officer could identify code term for prostitution based on his experience). Settled precedent under rules 401 and 402 thus recognizes that a police officer may provide opinion testimony pursuant to rule 701 if it is based on his personal observations and experiences. *Reece v. State*, 878 S.W.2d, 320, 325 (Tex. App.-Houston [1st Dist.] 1994, no pet.) (holding that police officer may testify, based on his training and experience, that actions he observed were consistent with selling drugs); *Austin*, 794 S.W.2d at 410–11 (holding that police officer properly opined, based on his personal experience, that "Swedish deep muscle rub" was code for prostitution); *see also McRae v. State*, 152 S.W.3d 739, 746–47 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (holding that officer's observations of defendant's performance on one-leg stand did not convert lay witness testimony into expert testimony); *see also* TEX.R. EVID. 701, 602 (stating

requirements relating to personal knowledge of witness).

In the context of drug offenses, in which valuations are similarly dispositive of levels or degrees of offenses, courts routinely rely on police officers' testimony concerning the "street value" of illegal substances. *See Cole v. State*, 194 S.W.3d 538, 549 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).

Applying these principles to this case, within the parameters of the settled standards that control our review of the sufficiency of the evidence, we conclude that the evidence is legally and factually sufficient to support appellant's conviction for class-A misdemeanor criminal mischief.

In contending that the evidence is legally insufficient, appellant relies on *Sebree* and *Elomary* and contends that the evidence in this case fails the tests established by those cases. We disagree. Gawerc relied on a specific dollar-and-cent estimate of the pre-tax "market value" of the cost of repairs, as obtained from a body shop near his home on Bissonnet Street. This was not an "off-the-wall" approximated figure that Gawerc recalled from memory. *See Elomary*, 796 S.W.2d at 193. To the contrary, Gawerc referred to the estimate to refresh his memory and state a precise cost of repair.

But, Officer Brooks also provided an estimate, based on his experience, that it would cost about $1,500 to repair the damaged hood of the 2001 Mercedes SUV. Though it is true that Brooks did not claim to have *"personal knowledge* as to what it would cost to repair something in a given case," and also conceded that he was not a mechanic, he did not rely on his personal knowledge or his skill as a mechanic in arriving at his estimate. Instead, he relied on his professional experience as a police officer.

We hold that a rational trier of fact could have found, beyond a reasonable doubt, that appellant inflicted damage at a cost of repair of at least $500 and less than $1,500. Therefore, we conclude that the evidence is legally sufficient to support appellant's conviction, and we overrule her first and third points of error.

We further hold, on reviewing all of the evidence, that the evidence supporting appellant's conviction is not so weak that the jury's verdict is clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence and, therefore, hold that the evidence is factually sufficient to support appellant's conviction.

We overrule appellant's second point of error.

## Conclusion

We affirm the judgment of the trial court.