NO. 07-10-0413-CR
NO. 07-10-0414-CR
NO. 07-10-0415-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

FEBRUARY 23, 2012

_____

BOBBY JOE LEE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY;

NOS. 1181069D, 1181071D, 1181073D

HONORABLE DAVID CLEVELAND, sitting for the HONORABLE RUEBEN
GONZALEZ, PRESIDING JUDGE for purposes of Guilt or Innocence, and the
HONORABLE RUEBEN GONZALEZ, PRESIDING JUDGE for purposes of Punishment

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant was convicted by a jury of two counts of third degree theft[1] and one

count of third degree criminal mischief.[2] Following a plea of "true" to the enhancement

_____

[1]In Cause Nos. 1181069D and 1181071D, Appellant was convicted of the third degree felony offense of

notice contained in each indictment,[3] the jury assessed Appellant's punishment in each case at confinement for fifty years. The trial court ordered that the sentences run concurrently. In a single point of error, Appellant asserts the State's evidence in support of his convictions is legally and factually insufficient.[4] We modify the trial court's judgments and, as modified, affirm.

## BACKGROUND

In January 2010, three indictments were returned against Appellant. In Cause No. 1181069D, Count One of the indictment alleged that, on or about November 18, 2009, Appellant unlawfully appropriated by acquiring or otherwise exercised control over property, to-wit: money and an automated teller machine, valued at $20,000 or more, but less than $100,000, with intent to deprive the owner, Joe Martinez, of the property. In Count Two, the indictment alleged that, on the same date, Appellant intentionally, with the specific intent to commit the offense of theft of property valued at $20,000 to

---

theft of property valued at $20,000 or more but less than $100,000. *See* Tex. Penal Code Ann. § 31.03(a), (e)(5) (West 2011). Throughout the remainder of this opinion, we will cite to provisions of the Texas Penal Code as either "§ _____" or "section _____."

[2]Although the indictment in Cause No. 1181073D alleged the second degree felony offense of criminal mischief involving property valued at $100,000 or more but less than $200,000, *see* § 28.03(b)(6), the jury convicted Appellant of the lesser-included third degree felony offense of criminal mischief involving property valued at $20,000 or more but less than $100,000. *See* § 28.03(a), (b)(5).

[3]The indictment in each case contained a habitual offender paragraph alleging Appellant had two prior felony convictions for the offense of burglary of a habitation: one in July 1985 and, subsequent to that conviction having become final, the other in January 1992. Under the facts of this case, Appellant was subject to punishment by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. *See* § 12.42(d).

[4]Appellant asserts the trial court erred by denying his motion for directed verdict. In doing so, he brings a legal sufficiency challenge. *See Barnes v. State*, 248 S.W.3d 217, 219 (Tex.App.—Houston [1st Dist.] 2007, pet. dism'd) (citing *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App. 1990)). Although Appellant asserts the evidence is factually insufficient, we need not address that point because the Texas Court of Criminal Appeals has held that there is no meaningful distinction between the legal and factual sufficiency standards. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010).

$100,000, performed an act, to-wit: pull or push an automated teller machine from its base with the use of a Caterpillar tractor/wheel loader, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

In Cause No. 1181071D, Count One of the indictment alleged that, on or about November 18, 2009, Appellant unlawfully appropriated, by acquiring or otherwise exercising control over property, to-wit: a Caterpillar tractor/wheel loader with a value of $20,000 or more, but less than $100,000, with intent to deprive its owner, Russell Cobbs, of the property. In Count Two, the indictment alleged that, on the same date, Appellant intentionally operated a motor-propelled vehicle, to-wit: a Caterpillar tractor/wheel loader, knowing that he did not have the effective consent of its owner, Russell Cobbs.

The indictment in Cause No. 1181073D alleged that, on or about November 18, 2009, Appellant intentionally or knowingly damaged or destroyed tangible property, to-wit: bank property and an automated teller machine, by pulling or pushing an automated teller machine from its base attached to bank property with the use of a Caterpillar tractor/wheel loader, without the effective consent of its owner, Joe Martinez, and caused a pecuniary loss of $100,000 or more, but less than $200,000 to Martinez.

In August 2010, a trial on the merits was held. Officer Kaare Martin of the Fort Worth Police Department testified that, on November 18, 2009 at 4:37 a.m., he responded to a commercial hold-up alarm at the OmniAmerican Bank. As he approached the bank, he saw a front-end loader being driven up the street adjacent to

3

the bank. He then observed a black male wearing a tan jacket jump from the cab of the front-end loader. The man then ran toward the bank's drive-thru where two other men were standing approximately four feet from an ATM that had been removed from its base and was sitting in the middle lane of the drive-thru. One man was wearing a black jacket and camouflage pants. The other man was wearing black clothing. Both men had masks on their faces.

As the man who jumped from the front-end loader approached the two men at the ATM, they started running in the same direction. Officer Martin followed the three men until they split up in a parking lot and then followed the man wearing the black jacket and camouflage pants. The man ran through the parking lot and jumped a stockade fence into the backyard of a residence. Officer Martin left his patrol car and, approximately thirty seconds later, spotted a man crouching underneath a tree in the side yard of the residence. He believed the man was attempting to conceal himself. Officer Martin feigned a move as if he were going around to the other side of the residence. As he did so, he could see the shadow of the crouching man move toward him. Officer Martin then returned to his original position, pulled his gun and ordered the man to lie on the ground. The man was wearing a black jacket and camouflage pants. Around the man's neck was a pair of shorts and he had a pair of gloves. Officer Martin testified that he had observed the man earlier using the pair of shorts as a mask and indentified Appellant as one of the men who was standing near the ATM. He also identified Darius Jackson as the man who jumped from the cab of the front-end loader wearing a tan jacket.

4

Officer Martin further testified that on the night in question he also observed a GMC pickup less than a block from the bank. Its engine was running and the steering column had been broken allowing the ignition switch to be bypassed. Based on these observations, he believed the pickup was involved in the commission of the offense.

Officer Christopher Britt testified that, when he arrived at the bank, the front-end loader was parked in the street. After observing that Officer Martin had handcuffed Appellant, he discovered a Chevrolet Tahoe SUV parked nearby on the wrong side of the street in front of a vacant house. The ignition had been punched out, there were no keys, and the vehicle appeared to have been stolen. He searched the vacant house but found no one.

Russell Cobbs, project superintendant for Texas Sterling Construction Company, testified that, on the morning of November 18, he discovered his Caterpillar front-end loader was missing from the equipment yard located near the bank. Two gates that were usually chained together were flung open and the padlock holding the chains together had been cut. He later identified the front-end loader missing from the equipment yard as the front-end loader found at the bank. Without objection, he estimated the value of the front-end loader to be between $90,000 and $100,000.

Angel Grizzle, Director of Administrative Services and Corporate Security for the bank, arrived at the bank and observed that the drive-thru canopy was nearly completely down and the ATM had been removed from its base. Without any objection, she testified that its purchase price was approximately $60,000, but also testified the total amount of money in the ATM at the time of the incident was $59,380. On cross-

examination, she agreed with Appellant's counsel that the value of the ATM was less than $20,000 if you accounted for its depreciation taken during the time the bank owned it.

Detective Ed Van Meter testified that, at least two persons were involved in the incident, Jackson and Appellant. He testified that the awning of the drive-thru and ATM were heavily damaged. Without objection, he estimated the ATM's value including its cash was more than $20,000 but less than $100,000 and, based on an estimate from a construction company given to him by the bank, he estimated the cost of repairing the drive-thru was approximately $116,000. On cross-examination, he testified that his original estimation of the cost of repairing the drive-thru was much higher than the information subsequently presented to him by the prosecutor during trial. He testified that he now believed the cost of repairing the drive-thru was $90,000.

Detective Van Meter also testified he believed there were two vehicles involved in the theft – the GMC pickup and the Chevrolet Tahoe SUV. He testified that both vehicles had broken steering columns and contained tools commonly used for theft and burglary. He also testified the Tahoe contained Caterpillar keys, heavy-duty bolt cutters and a picture of Jackson. He later determined the Tahoe was registered to Jackson's brother. Both Jackson and Appellant lived in Dallas.

At the trial's conclusion, the jury convicted Appellant of theft of property valued at $20,000 or more but less than $100,000 as alleged in Causes Nos. 1181069D and 1181071D. The jury also convicted Appellant of criminal mischief, a third degree felony, i.e., criminal mischief involving property valued at $20,000 or more but less than

6

$100,000, a lesser-included offense to the offense criminal mischief, a second degree felony, as alleged in Cause No. 1181073D. At the punishment phase of trial, the Appellant plead "true" to the enhancement allegations contained in each indictment. The jury assessed Appellant's sentence at fifty years in each case and the trial court subsequently issued its judgments. This appeal followed.

## DISCUSSION

Appellant asserts the evidence is insufficient because he was at the wrong place at the wrong time, i.e., a location close to where a fleeing suspect had last been seen. He also asserts Officer Martin was confused by the similarity in the clothes of the various suspects fleeing the scene and there was no evidence at trial of monetary damages related to the various offenses for which he was convicted.

### SUFFICIENCY OF THE EVIDENCE STANDARD OF REVIEW

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010); *Jones v. State,* 343 S.W.3d 550, 552 (Tex.App.—Fort Worth 2011, no pet.). Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this Court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson,*

7

443 U.S. at 319; *Brooks,* 323 S.W.2d at 912; *Sanders v. State*, 346 S.W.3d 26, 31 (Tex.App.—Fort Worth 2011, pet. ref'd). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319; *Hooper v. State,* 214 S.W.3d 9, 15 (Tex.Crim.App. 2007).

Further, the trier of fact is the sole judge of the weight of the evidence and credibility of the witnesses; Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Margraves v. State,* 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), and we may not re-evaluate the weight and credibility determinations made by the fact-finder. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Thus, we resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Id.* at 404. The State is not required to present direct evidence to establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). Indeed, circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13. Furthermore, the law does not require that each fact "point directly and independently to the guilt of the appellant, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.; Guevara*, 152 S.W.3d at 49. In addition, when conducting a legal sufficiency review, we consider all evidence that was admitted, including evidence that might have been inadmissible if a proper objection had been made.

8

*Russeau v. State*, 171 S.W.3d 871, 879 n.2 (Tex.Crim.App. 2005), *cert. denied*, 548 U.S. 926, 126 S.Ct. 2982, 165 L.Ed.2d 989 (2006) (citing *Dewberry*, 4 S.W.3d at 240)).

THEFT

A person commits the offense of theft if he unlawfully appropriates[5] property with the intent to deprive the owner of that property. *See* § 31.03(a). Intent to deprive may be determined from the acts of the accused, *Fierro v.* State, 706 S.W.2d 310, 313 (Tex.Crim.App. 1986), *Banks v. State,* 471 S.W.2d 811 (Tex.Crim.App. 1971), and it must be remembered that the element which must be proven is not deprivation, but the accussed's "intent to deprive" at the time of the taking. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim.App. 1981). If the value of the property stolen is $20,000 or more but less than $100,000, the offense is a third degree felony. *See* § 31.03(e)(5).[6]

CRIMINAL MISCHIEF

A person commits criminal mischief if, without the effective consent of the owner, he intentionally or knowingly damages or destroys the tangible property of the owner.

---

[5]Property is "appropriated" if it is taken without the effective consent of the owner. See § 31.03(b)(1).

[6]Either the owner of the property or a non-owner may give testimony regarding an item's value. *Smiles v. State,* 298 S.W.3d 716, 719 (Tex.App.—Houston 2009, no pet.) (citing *Sullivan v. State*, 701 S.W.2d 905, 908 (Tex.Crim.App. 1986). When an owner of the property testifies, the presumption is that the owner is testifying to an estimation of the fair market value. *Id.* Because an owner's estimation is an offer of the witness's best knowledge of the value of his property, such testimony often constitutes sufficient evidence for the trier of fact to make a determination as to the value based on the witness's credibility. *Jones v. State,* 814 S.W.2d 801, 803 (Tex.App.—Houston [14th Dist.] 1991, no pet.) (citing *Sullivan,* 701 S.W.2d at 909). Moreover, "[i]f [an] appellant wishes to rebut the owner's opinion evidence he must do more than merely impeach the witness' credibility during cross-examination; he must offer controverting evidence as to the value of the property." *Id. See also Freeman v. State,* 707 S.W.2d 597, 602 (Tex.Crim.App. 1986) (a store's security guard may be the owner of the company's merchandise for purposes of the theft statute if, at the time of the offense, he or she had a greater right to possession than the accused). Appellant does not contest whether Cobbs, Martinez and Grizzle are "owners."

*See* § 28.03(a)(1).[7]  If the value of the property damaged or destroyed is $20,000 or more but less than $100,000, the offense is a third degree felony.  *See* §§ 28.03(b)(5), 31.03(e)(5).

LAW OF PARTIES

The Texas Penal Code provides that "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."  § 7.01(a).  A person is criminally responsible for the offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  § 7.02(a)(2).  When determining whether one participated as a party, we may look to events occurring before, during, and after the commission of the offense and rely on actions of the defendant that show an understanding and common design to do the prohibited act.  *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App. 1987).

ANALYSIS

The evidence at trial showed that, at approximately 4:30 a.m., moments after an alarm went off, a person wearing a mask, a black jacket, and camouflage pants was seen standing four feet from an ATM that had been forcibly removed from its base by a stolen front-end loader.  When approached by a police officer, that person fled from the bank in the same direction as the driver of the front-end loader and the other person

---

[7]While section 28.03(a) describes three categories of conduct constituting the offense of criminal mischief, the indictment in this case specifically alleged Appellant committed the offense by intentionally or knowingly damaging or destroying the tangible property of the owner.  *See* § 28.03(a)(1).

standing near the ATM. He ran through a parking lot and jumped a stockade fence into a residential backyard. Approximately thirty seconds later, he was observed by Officer Martin crouched beneath a tree, apparently attempting to avoid detection. And, when he believed Officer Martin was circling the residence in the opposite direction, he attempted to escape but was caught. That man was identified by Officer Martin as Appellant.

At the time of his arrest, Appellant was wearing a black jacket and camouflage pants. He had a pair of shorts around his neck and a pair of gloves. The presence of the shorts, presumably being used as a mask, and the gloves, to avoid leaving fingerprints, is indicative that, prior to his arrival at the bank, Appellant had formed the intent to deprive the owner of the ATM and/or its contents. Because he was assisting in the ATM's theft with other persons, a rational juror could infer that he was acquainted with Darius Jackson, the driver of the front-end loader. Because the front-end loader was appropriated from its owner prior to the incident at the bank and was necessary to move the ATM, a rational juror could also infer that Appellant was part of a plan to steal the front-end loader and then remove the ATM from its base in order to steal the ATM and/or its contents. That he fled at the same moment and in the same direction as Jackson and the other person standing beside the ATM supports the inference that he was a part of the group involved in illegal activity. In the process of carrying out this crime, the ATM and drive-thru were heavily damaged. In sum, the evidence established Appellant not only participated in removing the ATM from its base while damaging the ATM and drive-thru in the process, but also the theft was part of a common design with

at least one other person to steal the front-end loader and then use that vehicle to steal money from the ATM.

Regarding property valuations, Cobbs testified that a new front-end loader would cost him $120,000 and the value of the front-end loader that was stolen was $90,000 to $100,000. Although Grizzle agreed with Appellant's counsel on cross-examination that the value of the ATM, considering its depreciation for accounting purposes, was less than $20,000, her direct testimony was that the ATM was purchased for $60,000 and the total amount of money in the ATM at the time of the incident was $59,380. Although Detective Van Meter originally testified on direct examination that the original estimated cost of repairing the bank's drive-thru was $116,000, he testified during cross-examination that new information led him to believe that the cost of repair was $90,000. These three witnesses supplied evidence, without objection,[8] that the cost of the front-end loader, the value of ATM and/or its contents, and the repair cost of the drive-thru was, in each case, more than $20,000 but less than $100,000.

Accordingly, based upon an interpretation of this evidence in a light most favorable to the verdict and the reasonable inferences to be drawn therefrom, a rational juror could have found that the State proved the elements of theft and criminal mischief, involving property valued at more than $20,000 but less than $100,000, beyond a reasonable doubt. Appellant's single point of error is overruled.

---

[8]Even if Grizzle's testimony could be considered inconsistent, we must resolve any inconsistencies in the evidence in favor of the verdict. *Curry*, 30 S.W.3d at 40. Here, judging from the verdict, the jury apparently found Grizzle's estimates that the ATM's value exceeded $20,000 credible. We may not re-evaluate that finding. *Dewberry,* 4 S.W.3d at 740. Neither did Appellant object to the evidence offered by any of the three witnesses in valuing the ATM, the front-end loader or the cost of repairs to the bank's drive-thru. Therefore, any objection related to hearsay and lay and expert opinions was waived. Tex. R. App. P. 33.1(a); *Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App. 2002). *See Holz v. State,* 320 S.W.3d 344, 351-52 (Tex.Crim.App. 2010).

MODIFICATION OF JUDGMENTS

In reviewing the record, it has come to this Court's attention that each of the trial court's judgments include clerical errors. In each case, the judgment reflects: (1) "Plea to 1st Enhancement Paragraph: N/A," (2) "Finding on 1st Enhancement Paragraph: N/A," and (3) "Plea to 2nd Enhancement/Habitual Paragraph: Not True." From the record, we are able to determine that each of these statements is incorrect. When we have the information necessary to do so, this Court has the authority to modify the judgment of the court below to make the record speak the truth. Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex.Crim.App. 1993). The authority to reform a judgment is "not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex.App.--Dallas 1991, pet. ref'd). Because we have the information before us that would allow the modification of each judgment, we hereby modify each judgment to reflect: (1) "Plea to 1st Enhancement Paragraph: True," (2) "Finding on 1st Enhancement Paragraph: True," and (3) "Plea to 2nd Enhancement/Habitual Paragraph: True.""

CONCLUSION

The trial court's judgments are modified as provided hereinabove and, as modified, are affirmed.

Patrick A. Pirtle
Justice

Do not publish.

13