

# COURT OF APPEALS
# SECOND DISTRICT OF TEXAS
# FORT WORTH

## NO. 02-12-00161-CR

NICOLE RENEE
GLASSCHROEDER

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Nicole Renee Glasschroeder appeals her conviction for criminal

mischief.  *See* Tex. Penal Code Ann. § 28.03(a) (West 2011).  In a single issue,

---

[1]*See* Tex. R. App. P. 47.4.

she argues that the trial court erred by denying her motion for a directed verdict of acquittal.  We affirm.

## I. BACKGROUND

## A. Factual Background

On January 17, 2011, at approximately 2:20 a.m., Officer David Bohannan, a patrol officer with the University of North Texas's Police Department ("the police department"), saw a car "weaving within the roadway."  Officer Bohannan followed the car "to make sure that the driving pattern . . . continued."  The driver, Appellant, continued to weave, failed to use turn signals, and went over the speed limit.  Officer Bohannan pulled the car over, and Appellant got out of the car.  She was "slurring some of her words," and Officer Bohannan could tell she was "possibly intoxicated."  Officer Bohannan arrested Appellant for driving while intoxicated, handcuffed her, and put her in the back passenger seat of his patrol car.  Throughout, Appellant's behavior varied widely between arguing, crying, and laughing.  Officer Bohannan kept the back passenger door open to read Appellant the required warnings, but Appellant repeatedly tried to get out of the car; thus, Officer Bohannan shut the back passenger door and rolled the window "all the way down to keep her inside the vehicle."  Appellant then threw herself head first out of the back passenger window, again trying to get out of the car. Officer Bohannan caught her and placed her back into the patrol car with the help of his back-up officer, Corporal Bredger Thomason.  Officer Bohannan closed the

back passenger door again and rolled the window up halfway. At this point, Appellant began "cussing and using vulgarities."

Officer Bohannan left Appellant in the car and began to leave in order to help Corporal Thomason impound Appellant's car. As he walked away, he heard "a loud thud." Officer Bohannan turned around and saw that the patrol car's "window seal was out of the frame, pushed out of the frame a little bit." Pictures of the patrol car showed that one of the back passenger windows was gaping away from the door of the patrol car near the top window seal. Video from inside the patrol car showed that Appellant spun to the side and kicked the back passenger window. The patrol car was not damaged before Appellant was placed in the rear passenger seat.

### B. Procedural History

Appellant was charged by information with criminal mischief, causing pecuniary loss of $500 or more, but less than $1,500. *See* Tex. Penal Code Ann. § 28.03(a)(1), (b)(3)(A) (West 2011). At trial, the State introduced an invoice showing that the University of North Texas paid Bill Utter Ford, a Ford dealership, $1,003.79 to repair the door. The invoice showed that the charges included $79.80 for labor, $836.99 for parts (specifically, a rear-window assembly, molding for the rear window, and window trim), and $87.00 to tint the stationary rear window, which was included as part of the rear-window assembly.

Lieutenant Mark Bergstrom, who was in charge of maintaining all vehicles used by the police department, testified that he took the patrol car to Bill Utter

3

Ford the day after Appellant's arrest. Lieutenant Bergstrom believed the entire window assembly would have to be replaced because, based on his past experiences with similar damage to patrol car doors, the rear passenger door would leak if the entire window assembly was not replaced. Indeed, the assembly for a damaged window frame comes in "one piece," which does not allow for partial replacement of part of the window assembly. He stated that the police department used Bill Utter Ford whenever a patrol car needed body work because the dealership completes the work quickly, patrol cars must be repaired to meet factory specifications, and Bill Utter Ford is approved as a company that could do such work for the police department. Lieutenant Bergstrom testified that the cost to repair Officer Bohannan's patrol car was consistent with previous similar repairs done by Bill Utter Ford.

Once the State closed its presentation of evidence, Appellant moved for a directed verdict of not guilty:

> [O]ur first motion is we'd ask the Court enter a judgment of acquittal, a directed verdict of acquittal, on the ground that the State has not presented one iota of testimony or evidence showing that the repairs that were made under this invoice were either necessary or that the costs which are indicated on the exhibit were—constitute the fair market of those repairs.
>
> They have presented, I think unwisely, or they relied solely upon this [invoice] to establish both of those things . . . . [Y]ou'll nowhere see anything in here that says these repairs were necessary or even an assertion by Bill Utter that this is the fair market value of the services being provided for repair. There is zero.

. . . And the invoice doesn't say that these repairs were necessary. It doesn't say that they were fair market value anywhere. And so not only can the State not prevail on its Information that alleges the repairs cost more than $500.00, they can't prevail even on a lesser included offense or lower degree offense.

. . . [T]hey quite shockingly have not put on anybody that testified that the services and repairs were reasonable and necessary. Nowhere.

The trial court denied the motion, and Appellant began to present her evidence.

Appellant called Jon Schell as an expert in auto glass repair. Schell testified that the damage shown in the pictures of the patrol car would cost less than $50 to repair by taking a rubber hammer and tapping the window area back into place. If he needed to replace the rear-window assembly as Bill Utter Ford did, however, Schell stated he could use junkyard or "aftermarket" parts to significantly lower the price to $287 versus the $836.99 charged by Bill Utter Ford. Schell generally charges $100 an hour for labor. Schell admitted that if original parts from the manufacturer are required for a repair, a dealership is the only way to get such parts.

The trial court charged the jury in the application paragraph that it could find Appellant guilty of criminal mischief if it found beyond a reasonable doubt that she "did . . . intentionally and knowingly damage[2] tangible property, to wit:

---

[2]During the conference on the jury charge, the State argued that the only allegation that should be included in the charge was that the accused damaged tangible property, thereby eliminating the need for an instruction concerning the fair market value or necessity of the cost of repair, which relate to destruction.

an automobile, by pushing or kicking the window, without the effective consent of David Bohannon, the owner of the property, and did thereby cause pecuniary loss of $500.00 or more, but less than $1,500.00 to the said owner." The trial court also charged the jury, however, that if it had a reasonable doubt regarding the amount of the pecuniary loss, it could find that such loss equated to either (1) less than $500, but $50 or more or (2) less than $50, but greater than $0. The trial court defined pecuniary loss as "the cost of repairing or restoring the damaged property within a reasonable time after damage occurred."[3] The jury found Appellant guilty of criminal mischief and determined that the pecuniary loss was less than $500, but $50 or more—a class B misdemeanor. The jury then assessed Appellant's punishment at 14 days' confinement and a $500 fine. This appeal followed.

In one issue, Appellant argues that the trial court erred by denying her motion for directed verdict because there was no evidence (1) as to the fair market value of the repair cost or (2) that the repairs were necessary. The State

---

Defense counsel agreed with the State's election stating, "[I]t's just absurd that they would be entitled—or they would assert that they're entitled to get an instruction on destruction of the motor vehicle. So I think that should be left out too." The Court also agreed after finding "I am taking out the destruction portion of the charge because I don't find that there's any evidence on that."

[3]Although Appellant objected to this definition, she does not challenge any part of the jury charge on appeal.

responds that proof of the actual cost of repairs, introduced through the invoice, is sufficient.

## II. DISCUSSION

## A. Standard of Review

We treat a challenge to the denial of a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *See Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *See id.* at 246. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories

contained in the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

## B. Application to Criminal Mischief

A person commits criminal mischief if she intentionally or knowingly damages or destroys tangible property without the owner's effective consent.[4] *See* Tex. Penal Code Ann. § 28.03(a)(1). The degree of the offense—Class C misdemeanor, Class B misdemeanor, or Class A misdemeanor—is determined by the amount of the pecuniary loss to the property. *See* Tex. Penal Code Ann. § 28.03(b); *Miller v. State*, 343 S.W.3d 499, 501 (Tex. App.—Waco 2011, pet. ref'd). "The 'value of pecuniary loss' is a crucial element of the offense because it forms the basis of the punishment assessed." *Lackey v. State*, 290 S.W.3d 912, 918 (Tex. App.—Texarkana 2009, pet. ref'd). If the property is damaged (instead of destroyed), the amount of pecuniary loss is determined by "the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred." Tex. Penal Code Ann. § 28.06(b). To prove pecuniary loss regarding damaged property, evidence of the actual cost of repairing the property is sufficient. *See Lackey*, 290 S.W.3d at 918. Therefore, if the property is not

---

[4] Appellant does not challenge the sufficiency of the evidence to show that she damaged the property of Officer Bohannan without his consent.

destroyed, a defendant is not entitled to an instruction on fair market value. *See Milo v. State*, 748 S.W.2d 614, 618 (Tex. App.—San Antonio 1988, no pet.).

A hypothetically correct jury charge in this case, therefore, would have defined pecuniary loss as the cost of repairing or restoring the patrol car within a reasonable time after the damage occurred. The State introduced evidence of what the repairs actually cost the police department. This evidence, which was more than a mere guess or estimate, was sufficient to prove cost of repair. *See Holz v. State*, 320 S.W.3d 344, 347, 350–51 (Tex. Crim. App. 2010); *Barnes v. State*, 248 S.W.3d 217, 222–23 (Tex. App.—Houston [1st Dist.] 2007, pet. struck). Evidence of the fair market value of the repair was not required to prove pecuniary loss. *See Kinkade v. State*, 787 S.W.2d 507, 508–09 (Tex. App.—Houston [1st Dist.] 1990, no pet.).

Appellant further argues that because there was no evidence that the repairs made to the patrol car were necessary, her conviction cannot withstand a sufficiency attack. Proof of the necessity or reasonableness of the repairs is not required to support Appellant's conviction. *See id.* at 509. As discussed above, proof of the actual cost of repair is all that is required if the property was damaged but not destroyed.

In sum, the evidence shows that the police department paid $1,003.79 to repair the damage Appellant admittedly caused to the window of the patrol car. The entire window assembly had to be replaced based on how Ford provides replacement parts for such a repair. The police department used a local Ford

dealership to do the body work because such repairs would meet factory specifications and because the dealership had been approved to do such work for the police department. Appellant's expert witness testified that he could have replaced the window assembly for less than $500 if a rear-window assembly was required. Indeed, the jury found that the pecuniary loss was $50 or more, but less than $500. This evidence is sufficient to support the jury's verdict based on the hypothetically correct jury charge regarding pecuniary loss.

## III. CONCLUSION

We conclude that the evidence was sufficient to convict Appellant of the Class B misdemeanor offense of criminal mischief. Therefore, we overrule Appellant's sole issue and affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 2, 2013