**Opinion issued April 10, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00209-CR

————————————

**ELEAZAR SALAZAR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1318063**

---

## MEMORANDUM OPINION

A Harris County grand jury indicted Eleazar Salazar on the felony offense of possession with intent to deliver a controlled substance, namely, cocaine weighing at least 400 grams by aggregate weight, including adulterants and dilutants. TEX.

HEALTH & SAFETY CODE ANN. §§ 481.112(a), (f), 481.102(3)(D) (West 2010)).

Salazar moved to suppress the evidence seized at the time of his arrest, contending that both his arrest and the seizure of evidence violated his Fourth Amendment rights. The trial court denied the motion to suppress, and the case proceeded to trial. The jury found Salazar guilty of the charged offense. Salazar opted to have the trial court assess punishment; the trial court assessed a sentence of twenty-five years' incarceration.

Salazar contends that the evidence is insufficient to support the jury's finding of guilt and that the trial court abused its discretion in admitting testimony from law enforcement officers about the circumstances that led to his arrest. Salazar also challenges the trial court's denial of his motion to suppress physical evidence, contending that the arresting officer lacked justification to initiate the stop. We hold that sufficient evidence supports the jury's finding and that the trial court did not abuse its discretion in making the challenged evidentiary rulings. We therefore affirm.

## Background

One Friday afternoon in August 2011, Officer J. Fisher, a ten-year veteran of the Houston Police Department, was patrolling near the Southwest Freeway and Kirby Drive. He was driving on the northbound service road when he noticed a tan Chevrolet Suburban with darkly tinted windows approximately two car lengths

2

ahead of him. The Suburban approached a red light at the Greenbriar intersection and, without stopping or signaling, made a right turn onto Greenbriar. Officer Fisher followed the Suburban onto Greenbriar. He caught up to the Suburban within a few blocks and turned on the patrol car's emergency equipment. Instead of immediately stopping, the driver of the Suburban turned onto a side street. As the Suburban made the turn, Officer Fisher observed the driver and the front-seat passenger and noticed that the passenger, later identified as Salazar, was moving toward the back-seat passenger area behind the center console and the driver's seat. Officer Fisher recounted that Salazar's movements

> were very abrupt, like he was moving something towards the back, like something—from—the—where the angle of it is, it's very hard for a driver to reach back behind themselves to set something back there. I never saw any movement like that. All I saw was the front passenger movement, making movement behind him . . . [and] the car was shaking a whole lot, especially when [it] stopped.

When the Suburban pulled over, Officer Fisher parked his patrol car and got out. He noticed the Suburban was shaking back and forth; as he approached the Suburban, he saw the passenger was continuing to make furtive movements in the back seat area.

Officer Fisher approached the driver-side door and asked the driver to roll down the window. Officer Fisher noticed a black alligator-print-embossed bag on the floor behind the front seats, unzipped and leaning near the back of the driver's seat against the center console. The bag was the only item in the back floorboard

3

area; otherwise, the car was spotless. Sticking out of the top of the bag, Officer Fisher saw a brick-shaped, shrink-wrapped package that contained a white substance. Based on his experience, Officer Fisher suspected that the substance was cocaine.

Officer Fisher directed the driver to exit the Suburban, handcuffed him, and seated him in the patrol car. Then, Officer Fisher returned to the Suburban, ordered Salazar to put his hands up and exit the Suburban. Officer Fisher patted Salazar down, handcuffed him, and placed him in the patrol car as well.

Once he secured Salazar and the driver in the patrol car, Officer Fisher called the HPD Narcotics Division for help at the scene. Officer J. Aguirre, an eighteen-year veteran of the HPD who was assigned to the Narcotics Division, responded to the call. Officer Aguirre conferred briefly with Officer Fisher and spoke with Salazar and the driver. Officer Aguirre retrieved the bag containing the brick of white powder and took it to the station. There, Officer Fisher tested the powder and obtained a positive result for the presence of cocaine. Officer Fisher repackaged the substance and brought it to the HPD's narcotics lockbox for safekeeping.

Salazar signed a formal stipulation that the results of the HPD Crime Lab's analysis of the substance were that the evidence "contains cocaine, including any

4

adulterants and dilutants, weighing 980.4 grams, which is at least 400 grams by aggregate weight."

## Discussion

## I.      Evidentiary Sufficiency Challenge

### A.      *Standard of review*

We review evidentiary sufficiency challenges under the *Jackson v. Virginia* standard. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). ("[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.") (referring to *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, (1979)).    Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Viewed in a light favorable to the verdict, the evidence is insufficient when either: (1) the record contains no evidence, or merely a "modicum" of evidence,

probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Laster*, 275 S.W.3d at 518. This standard applies equally to both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Ervin v. State*, 331 S.W.3d 49, 55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

We do not weigh any evidence or evaluate the credibility of any witness, as this is the function of the factfinder. *Williams*, 235 S.W.3d at 750. Instead, we determine whether both the explicit and implicit findings of the factfinder are rational, by viewing all the evidence admitted at trial and resolving any inconsistencies in the evidence in favor of the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992).

### B.    *Possession of cocaine with intent to deliver*

A person commits the offense of possession with intent to deliver a controlled substance if he knowingly possesses, with an intent to deliver it, a controlled substance listed in Penalty Group One, a group that includes cocaine. See TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), (f), 481.102(3)(D) (listing cocaine in Penalty Group 1). To obtain a conviction, the State must prove that the defendant (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *Id.* §§481.002(38),

481.112(a); *Peña v. State*, 251 S.W.3d 601, 606 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Possession is voluntary "if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL CODE ANN. § 6.01(b) (West 2011).

In prosecuting a defendant for possession of a controlled substance, the State must prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the substance possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010). A defendant's presence at the location where drugs are found is not enough to establish that the defendant had care, custody, or control of the drugs. *Evans*, 202 S.W.3d at 161–62.

Salazar contends that the evidence is insufficient to allow a reasonable jury to find beyond a reasonable doubt that he possessed the cocaine. To prove the element of possession, the State need not prove that the defendant had exclusive possession; joint possession is enough to establish the defendant's actual care, custody, or control of the drugs. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1987); *Hubert v. State*, 312 S.W.3d 687, 691–92 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). For either joint or sole possession, however, the State must prove that a link exists between the defendant and the drugs. *Id.*

7

When a defendant does not exclusively possess the drug, then additional, independent facts and circumstances must link the defendant to the contraband in a way that one reasonably can conclude that he had knowledge of the contraband and exercised control over it. *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.— Houston [1st Dist.] 2002, pet. ref'd). Among the links that may support a jury's finding of knowing possession are: (1) the defendant's presence during the search; (2) whether the substance was in plain view; (3) the defendant's proximity to and the accessibility of the substance; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the substance was found; (12) whether the place where the substance was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12. Not all of these factors must be proved; the logical force of all of the evidence, rather than the number of links, is dispositive to

show possession. *Id.* at 162; *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

### C.    *Analysis*

According to Salazar, the evidence affirmatively linking him to the cocaine in the Suburban is insufficient to support his conviction. The record shows that Officer Fisher noticed that Salazar, who was sitting in the front passenger seat, was moving in the direction of the passenger area on the floorboard behind the center console near the driver's seat, and that Salazar's movements were vigorous enough to make the whole vehicle shake. Officer Fisher did not see the driver making any movement toward the back. After Officer Fisher turned on his emergency lights, he noticed the Suburban was shaking "a whole lot" as it traveled down the street and that the shaking became even more pronounced when it stopped. Officer Fisher characterized Salazar's movements as furtive, and he recounted that Salazar continued to make the movements as Officer Fisher walked up to the Suburban.

Officer Fisher explained that Salazar's movements were "kind of a red flag" for him because, in his experience, that kind of movement in a car usually occurs when people are trying to hide narcotics or retrieve or hide a weapon. Officer Fisher approached the driver's side of the Suburban and had the driver roll down the window so that the light would give him a better view inside the vehicle. He noticed the bag of cocaine in plain view behind the driver's seat, leaning against

9

the back of center console—the same location toward which Salazar appeared to have been directing his movements and within Salazar's reach. Officer Fisher also testified that the bag was positioned in such a way that it would be "very hard for a driver to reach back behind themselves to set something back there. I never saw any movement like that."

Salazar notes the absence of evidence showing the existence of some of the affirmative-links factors, specifically, that Salazar made no incriminating statement, he did not act in a way that indicated a consciousness of guilt, he was not under the influence of narcotics when arrested, and he did not have a large amount of cash with him at the time. Nor does the record contain any evidence that the Suburban smelled of cocaine or that Salazar's fingerprints appeared on the black bag.

In assessing whether the evidence shows joint possession, the absence of some of the factors is not evidence of innocence that weighs against the factors that are present. *See Evans*, 202 S.W.3d at 162. The cocaine was in plain view and accessible to Salazar. It was in an area inside the car toward which Salazar had been making repeated, vigorous movements. *See Davis v. State*, 855 S.W.2d 855, 857 (Tex. App.—Eastland 1993, no pet.) (holding that defendant's furtive gestures specifically "going towards the bottom of the passenger's seat" linked defendant to

10

contraband).  We hold that the logical force of this evidence supports the jury's finding that Salazar knowingly possessed the cocaine.

## II.    Challenges to Evidentiary Rulings during Trial

Salazar contends that the trial court erred in admitting Officer Fisher's testimony that Salazar jointly possessed the cocaine and in admitting Officer Fisher's testimony explaining how he believed the bag of cocaine became positioned behind the driver's seat.

### A.    *Standard of review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).  A trial court does not abuse its discretion if some evidence supports its decision.  *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).  We uphold a trial court's evidentiary ruling if it was correct on any theory of law applicable to the case.  *Id.*; *see De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## B. Analysis

Salazar objected to Officer Fisher's agreement that Salazar could be "in 'joint possession'" of the cocaine recovered at the scene, arguing that it stated a legal conclusion. The State elicited the testimony by asking whether, in Officer Fisher's opinion as a narcotics officer with nineteen years' experience in law enforcement, the driver and Salazar could be in joint possession of the narcotics under the circumstances of the case. The State adduced this testimony after Salazar elicited testimony that the driver had also been charged with possession.

Texas law recognizes that police officers may testify concerning knowledge acquired through experience. *See* TEX. R. EVID. 702, 602; *Barnes v. State*, 248 S.W.3d 217, 223 (Tex. App.—Houston [1st Dist.] 2007, pet. struck); *see also Osbourn*, 92 S.W.3d at 537 (holding that "a witness who is familiar with the odor of marihuana smoke through past experiences can testify as a lay witness that he or she was able to recognize the odor"); *Reece v. State*, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (holding that police officers may testify, based on their training and experience, that a defendant's actions were consistent with selling narcotics).

Further, an officer's opinion testimony is not infirm merely because it embraces an issue of fact to be decided by the trier of fact. TEX. R. EVID. 704; *Bryant v. State*, 340 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2010, pet.

ref'd); *Reece*, 878 S.W.2d at 325. Officer Fisher's testimony was rationally based on the circumstances he perceived in the course of arresting Salazar and investigating the case—that given the plain view of the large amount of cocaine and its location, it was possible that more than one person possessed it. We hold that the trial court did not abuse its discretion in admitting Officer Fisher's testimony on this issue.

Salazar also objected to Officer Fisher's testimony about his belief that the passenger side occupant placed the purse containing the cocaine into the back seat area of the Suburban, because it was located directly behind the driver's seat, as speculation. "Speculation is mere theorizing or guessing about the possible meanings of facts and evidence presented." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). Officer Fisher did not guess about the meaning of Salazar's movements in the car; he based his testimony on his rational observation of the events, viewed through the lens of his law-enforcement experience. He noted that front seat occupants often place objects behind the seat next to them, rather than directly behind their own seat. He also noted that he had observed the passenger reaching toward that area of the car. We hold that the trial court did not abuse its discretion in overruling Salazar's objection to that testimony. *See Reece*, 878 S.W.2d at 325.

## III.    Denial of Motion to Suppress

Lastly, Salazar challenges the trial court's suppression ruling on the basis that Officer Fisher lacked a reasonable suspicion to pull the Suburban over and detain the driver for a traffic violation.

### A.    *Standard of review*

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Weide v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we defer to the trial court's determinations of historical fact if the record supports them. *Ford*, 158 S.W.3d at 493. We review de novo the trial court's application of the law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

Salazar contends the State did not adduce sufficient evidence to prove that the driver of the Suburban violated any traffic law and, as a result, the State did not have a right to detain Salazar. It is well-settled that a traffic violation committed in an officer's presence authorizes an initial stop. *See Stoker*, 170 S.W.3d at 812. The State is not required to show that the driver actually committed a traffic offense, but only that the officer reasonably believed a violation was in progress. *Ford*, 158 S.W.3d at 492; *Fernandez v. State*, 306 S.W.3d 354, 357 (Tex. App.—Fort Worth 2010, no pet.).

The Texas Transportation Code provides that a person commits a traffic violation if the person does not signal when intending to turn or change lanes. TEX. TRANSP. CODE ANN. § 545.104(a) (West 2011). Unlike some other traffic violations, such as the prohibition against following a vehicle too closely, failing to use a turn signal does not involve a subjective determination. *See Castro*, 227 S.W.3d at 742 (comparing facts before it to those in *Ford*). Thus, the trial court need not be presented with a detailed account of the officer's observations to decide whether the officer's belief that a traffic violation occurred was objectively reasonable as they relate to offenses involving a failure to signal. *Id.*

Salazar complains that Officer Fisher's testimony that the Suburban "did not use its turn signal" does not support the trial court's finding that the Suburban's driver failed to signal a right turn.

15

In *Castro*, the Court held that "in cases involving offenses such as failure to signal a lane change, a court can determine whether an officer's determination that a driver committed a traffic violation was objectively reasonable without being presented with a detailed account of the officer's observations." 227 S.W.3d at 742 (rejecting court of appeals' conclusion that evidence was insufficient to determine whether driver was required to have electric turn-signal lamps or if he was permitted to use hand and concluding that it was not unreasonable for trial court to assume that "vehicle" and "signal" had their most common meaning, and that vehicle in question was one that had electric turn-signal lamps that driver failed to use); *Benjamin v. State*, No. 01–10–0066–CR, 2011 WL 123512, at *5–6 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, pet. ref'd) (mem. op., not designated for publication) (following *Castro*).

The circumstances in this case likewise support the trial court's finding that a traffic violation justified the stop. First, the trial court, as the judge of the facts, did not view Officer Fisher's testimony as referring solely to the failure to use the car's turn signal, but to a failure to signal at all. In explaining the circumstances leading to the stop, Officer Fisher recounted twice that "he failed to use a turn signal." We understand this statement to refer to the driver's inaction, whether by hand signal or by the car's turn signal. We hold that the trial court did not err in

denying Salazar's motion to suppress on the basis of lack of reasonable suspicion that the driver had committed a traffic violation.

## Conclusion

We hold that sufficient evidence supports Salazar's conviction. We further hold that the trial court did not err in overruling Salazar's objections to Officer Fisher's testimony or in denying Salazar's motion to suppress. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).